## SUCCESSION OF DURNFORD.

A judgment, final as to the matters embraced by it, pronounced in an action between the same parties, in the same quality, the demand being the same, and founded on the same cause of action, is conclusive between them as to the object of the judgment. C. C. 2265. Such a judgment, though rendered only on one item of an account, is conclusive as to that item.

Where a judgment of the Supreme Court directs a judge of probates, in the settlement of the accounts of the curator of a succession, to allow the latter a credit on his account, on the day of his eviction from property sold to him by the deceased, for an amount awarded to him as damages for such eviction, " and to close the account and give judgment according to law," but is silent as to interest, no interest can be allowed. The allowance of interest is not a necessary consequence of the entry of the credit at a particular date.

Arts. 988, 989, of the Code of Practice, cannot be considered as binding successions to pay interest, where, from the nature of the debt, no interest is due. They place successions on the footing of ordinary debtors as to interest, by declaring that the payment of interest when due, shall not be affected by the fact of the estate being under administration, and dispense with the necessity of a judicial demand.

Where the words of a judgment are ambiguous, it must be construed with reference to the pleadings in the case, and to the jurisdiction of the court by which it was pronounced.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J. *Roselius* and *A. Hennen*, for the appellant. *Potts, Elmore, W. W. King* and *Grymes*, contrâ.

The judgment of the court was pronounced by

EUSTIS, C. J. This case was before the late Supreme Court, in June, 1845, and is reported in 11th Robinson's Reports, page 183. It is brought before us by an appeal from a judgment of the Court of Probates of New Orleans taken by the curator, in which the appellees, the heirs of *Durnford*, have united, and both claim a reversal of the judgment.

I. The first question which we shall examine is that which relates to the force and effect of the decree of the late Supreme Court, made in June, 1845. It orders that the judgment appealed from be annulled and reversed, and that the case be remanded with directions to the judge below, in the settlement of the account of *John McDonogh*, as curator of the estate of *Thomas Durnford* deceased, to give said *McDonogh* a credit on said account, for the sum of $18,000, of the date of July 19th, 1831, and to close the account, and give judgment according to law. Previous to the rendition of this decree, the cause had already been before the court, and had been decided on all the points at issue, except that relating to the demand of *McDonogh* for indemnity for the eviction he had suffered from a tract of land he had purchased from *Durnford*, and against which his succession was bound to warrant, and which was the subject of the decree under consideration. *Vide* 8 Robinson. 2 La. 544.

Concerning the authority of *res judicata*, the provisions of our Code are positive, both as to its effect and requisites. " The thing adjudged is said of that which has been decided by a final judgment," &c. Civil Code, art. 3522, §9. It has the sanction of a legal presumption, and evidence is not received against it.

A judgment may be annulled, at the instance of a party, for certain defects of form, and for causes which will cover all cases of fraud, and which are provided against by express legislation. Code of Practice, art. 604, *et seq.* Until the

judgment is annulled, it stands as conclusive between the parties. The autho- rity of *res judicata*, takes place only with respect to what was the object of the judgment. The thing demanded must be the same ; the demand must be founded on the same cause of action ; the demand must be between the same parties, and formed by them against each other in the same quality. Civil Code, art. 2265.

The object of the appellees is to have the subject of this decree re-examined and re-adjudged, and the power of the court to do this must depend entirely upon the decree having the requisites provided for in the preceding article. On examining the proceedings, it will be found to possess every one of them—there is a complete identity of demand, cause of action, parties and quality. Where all these substantial requisites exist, it would be unreasonable to destroy the effect of the *res judicata* on a question of mere form when the law requires none. There must be a suit—*actor*, *reus*, *judex*, and the judgment must be final, that is it must settle the matter which it purports to conclude. A judgment rendered on one item of an account is as conclusive as to that item, as though it were the subject of a distinct suit. Successions, syndicates and long standing accounts between merchants are disposed of by adjudications on particular items, and are rarely concluded by one judgment. The only test as to the effect of a decree is its finality as to the matters embraced in it, and its having the requisites of art. 2265.

Let us reverse the case, and suppose that the curator were to attempt, notwithstanding this decree, to charge the heirs of *Dunford* with a larger sum for his eviction from the land, or were to institute a personal action against them for more than $18,000 on account of it : we certainly should feel ourselves bound to limit him to the amount of the decree.

We have no power to review the matters determined by this decree of June, 1845, and hold that, in the account between the curator and the heirs, *McDonogh* is entitled to a credit for the sum of $18,000, of the date of July 9th, 1831.

II. The appellant contends that he is entitled to interest from the 19th of July, 1831, the day to which the credit of $18,000 is ordered to relate back. The sum of $18,000 was awarded by the decree to the appellant on his demand of $21,500, for damages sustained by him by reason of the eviction. No interest was allowed ; and, if the decree does not allow it, how can we grant it, on the principles on which we refuse even to examine the principal demand ? The decree is silent as to interest. It therefore gives none, and none can be given by us, unless the law grants interest in a case in which the court allows none.

If the court intended to allow interest from the date of July, 1831, they ought to have said so. The allowance of interest from that date is not a necessary consequence of the entry of the credit at that date. The claim was for damages, and there would have been no just reason for the allowance of interest before a demand for the principal. In the accounts rendered by the curator since July, 1831, the time of the eviction, this claim for indemnity was not made; but it appeared, for the first time, before the court in the account rendered by the curator to the heirs, in March, 1843.

We do not understand articles 989, 988 of the Code of Practice, and others relied on by the counsel for the appellant, as binding successions to pay interest, where, by the nature of the debt, no interest is due, but as providing that the payment of interest due or stipulated, shall not be affected by the administration which the succession is under, and as putting the succession on the

Succession of footing of an ordinary debtor as to its liabilitiy to pay interest, and dispensing
Durnford. with the necessity of a judicial demand.

If, as is stated by the counsel for *McDonogh*, the curator had, on the 19th
July, 1831, in his hands, $9,809 26 cents, and was a creditor of the succession
himself, *by reason of the eviction, for the sum of* $18,000, it was his duty, under
article 988, to have made known his claim at *that time,* and for his not having
done so, we have heard no reasonable cause assigned. Civil Code, arts. 1168,
1169, 1179, *et seq.* This is not important under the view we have taken of the
case ; but it is mentioned for the purpose of showing that there may have been
very good reasons, in the opinion of the court, for the non-allowance of this in-
terest on damages claimed for the eviction. We consider the decree as entire,
and *there is no power with us to change it.* It must be left with its legal con-
sequence and effects, and cannot be altered for one purpose, and closed to all
others. But the late Supreme Court, in the conclusion of their opinion which
immediately precedes the decree, intimate that it is the business of the judge to
give this credit for $18,000, strike the balance, and give a judgment according to
the 1007th article of the Code of Practice. This article authorizes an allow-
ance of interest on the balance from the day of the judgment; and the con-
cluding part of the article brings us to the consideration of another question
which has been argued at bar :

III. Whether that part of the judgment of the court below, which is con-
sidered as personal against the heirs, is correct. The Court of Probates ren-
dered judgment against the heirs for the sum of $8,190 74 cents, the balance
of the account. Article 1007 provides that if the balance be in favor of the
curator against the heirs or other claimants, they shall be adjudged to pay
him, *in the same manner* as he would be bound to pay them, were the
balance in their favor, and he may, until such payment be made, retain the
property of the succession which may be in his hands. The appellees con-
tend that, under this article, the judgment must be limited to the effects of
the succession, and that, if the judgment render them personally liable to
the curator, it must be reversed, as contrary to law and the evidence in the
case. The judgment of the Court of Probates is, "that *J. McDonogh* do
receive from the heirs of the deceased the sum of $8,190 74 cents, and
costs of suit." This judgment is the sole and necessary consequence of
the judgment of the Supreme Court, nothing having intervened since the
decision to change, in any respect, the state of the account. The effect
of this judgment is limited by the concluding part of article 1007, to
the effects of the succession in the hands of the curator. No judgment was
demanded against the heirs personally, and none was given by the court, as we
understand it. The court was acting within its jurisdiction on the *mortuaria* of
the deceased, and its decree must be limited by the pleadings, and its known
and established jurisdiction.

The liability of heirs, personally, to creditors by reason of their having done
acts which involve responsibility for the debts of a succession, is a matter *en
pais,* and is not to be inferred from the import of this decree, which is confined
to the adjustment of the account so far as the effects of the succession under its
administration are to be affected by it.

The heirs of *Durnford* are not in possession of the succession. When
they are, they can be held to answer, personally, before the ordinary tribunals,
for the consequences of their acts, of which the Court of Probates would
have no jurisdiction. Code of Practice, art. 996.

We have doubts whether that court would have jurisdiction over a question involving the responsibility of an heir for his personal acts in relation to the succession, so as to extend a judgment beyond the effects of the succession under administration; and, therefore, hold the judgment not to be, personally, binding upon the heirs. Such being its legal effect, there is no necessity for altering its phraseology.

Had there been any matter intervening between the rendition of the judgment of the Supreme Court, in June, 1845, and that of the Court of Probates in July following, to have changed the balance of the account, we should, under article 1007 of the Code of Practice, have given interest from the day of the judgment. But, as we have before said, the two judgments are, in point of fact, one, and having determined that of the Supreme Court to be final and conclusive on the heirs of *Durnford*, it must be so on the appellant, and we can allow no interest. *Judgment affirmed.*