## No. 10,371.

### JOHN BALDWIN SR. vs. ABIEL C. MOREY.

1. A contract, which though beginning with the words "sold this day," proceeds to fix a price which is to be paid in future instalments and to declare that when the payments shall be made as stipulated, the party "will give a deed" to the property, is not a sale passing title, but a conditional agreement to sell, importing an obligation to transfer title only after the performance of the conditions, particularly when the alleged purchaser, in subsequent solemn acts, himself declares that the title remains in his alleged vendor.
2. The possession voluntarily given to the promissee under such contract is defeasible by his failure to comply with the conditions of the contract.
3. After such failure and when the promissee has abandoned possession, the promissor is entitled to re-enter, without liability for damages or revenue.

APPEAL from the Nineteenth District Court, Parish of St. Mary. Goode, J.

Foster & Mentz for Plaintiff and Appellant:

A contract, beginning with the words, "sold this day," declaring that the alleged purchaser

shall pay the instalments of the price at fixed periods, with interest, and stipulating that "when done, Baldwin, or his heirs, will give a good deed," is not a sale, translating a title, but is a promise to sell, under which the title remains in the promissor. Thompson vs. Duson, 5th Southern Reporter. p. 58; 34 Ann. 677; 13 Ann, 361; 15 Ann. 483.

Such a contract, being commutative, the dissolving condition is implied in it. C. C. Art. 2046.

When the contract of sale is dissolved for non-payment of the price, the dissolution is retro-spective, going back to the date of the sale, the vendor stands in relation to the property as though he had never parted with the title, and he is entitled to all the fruits and revenues which the property has produced while it was out of his possession. McKenzie vs. Bacon, et als. 41 Ann. p. 9.

Therefore such fruits and revenues can never belong to the vendee.

A *fortiori* is the case when the contract is not one of sale, (under which title would have passed); but a mere promise to sell, under which the title always remains in the promissor.

### D. Caffery, for Defendant and Appellee:

1. A contract setting out that A sells to B all his unsold land, in a certain determinate body of land, containing a clause, that "when done, A. is to give a good deed in which the sale of intoxicating liquors will be prohibited" is a sale, passing title, and not an agreement to sell. 6 Ann. 776; 11 R. 349; 12 Ib. 474; 5 Ann. 656; 6 Ann. 26.

2. A seller is bound to explain himself clearly as to the extent of the premises. Rev. C. C. 2491. A *fortiori*, when the property is sold by the acre, must be made known to the seller the number of acres, when he demands the price.

3. When one sues to annul a contract so far as it vests title, he acknowledges the existence of the title, which he asks to be divested, else his suit, if he afterward say that he did not convey title, is a mere moot case.

4. Where one sells, delivers possession and afterward retakes possession, under agravated circumstances, the possession of the vendor, is a trespass and renders him liable to ex-emplary damages. 1 R, 140.

The opinion of the Court was delivered by

FENNER, J.   Plaintiff, alleging non-compliance with his obligations on the part of defendant, sues for the rescission of the following con-tract entered into on the 14th of February, 1878:

"Sold this day, to A. C. Morey, all the land included in the sugar-house lot on the Fuselier place, together with the sugar-mill and all the appurtenances, for the sum of $6,000; also all my unsold land on the Fuselier place, except swamp land, for $30 an acre.   The $6,000 for the sugar-house and the $30 an acre for the land is to be paid Baldwin or his heirs, in 5 equal annual payments, together with interest at 6 per cent. to be paid annually, and all taxes; *when done, Baldwin, or his heirs, will give a good deed*, in which the sale of intoxicating liquors will be prohibited; when any part of the above land named is fully paid for, a deed will be given."

The demand for rescission in this suit is confined to that portion of the contract referring to unsold land.

Defendant, admitting the contract and not pretending to have paid anything on account thereof, sets up sundry opposing defenses and demands, as follows :

1. That the sugar-house and lot included in the contract was subsequently sold by Baldwin to Coples & Dixon, whereby he has been damaged to the full amount of the price, viz: $6,000.

2. A denial that plaintiff has ever tendered to him the extent of the premises or caused the land to be surveyed so that respondent could know the amount due, with an averment that he has notified plaintiff before, and at, and since, the maturity of the instalments, that he was willing to pay.

3. That by vexatious and groundless litigation in enjoining defendant from disposing of the property, plaintiff has damaged him to the extent of $6,000.

He prayed for judgment ordering a survey of the property, and for the granting of a delay thereafter for payment of the price, and for $10,000 damages.

Subsequently, defendant filed a supplemental answer setting up that plaintiff had taken unlawful possession of the land, and asked a further judgment for $12,000 exemplary damages and for $2,000 per annum as rents and revenues.

The contract between the parties is, under our jurisprudence, not a sale, but a conditional agreement to sell, not transfering the title, but importing an obligation to make such transfer on compliance with the conditions stipulated. Thompson vs. Duson, 40 Ann. ——; Broadwell vs. Raines, 34 Ann. 677; Garrett vs. Crooks, 15 Ann. 483; Knox vs. Payne, 13 Ann. 361.

If any doubt existed as to this being the effect of the contract, it is removed by the express construction placed upon it by Morey in a contract of sale of a part of the land made by him to a third person shortly after its date, in which he declares that he " obligates and binds himself to procure from John Baldwin, Sr., in whom the title now rests, a full and complete title thereto when said notes and interest shall be paid."

The anomalous and unsavory evidence in this record need not be detailed or analysed. It convinces us that Morey was an adventurer, who came to this country to make his fortune, and who had married the daughter of plaintiff about one month before this contract. So far as that part of the contract which covered the sugar-house lot was concerned, we are satisfied that it was abandoned by both parties. The sugar-house always remained in the possession of Baldwin who made

valuable improvements on it, with the knowledge of Morey, who never made any opposition or set up any claims thereto till after this suit was brought.

The other lands appear to have been passed into Morey's possession and to have been partially cultivated by him during the year 1878.

A very short time served to convince Baldwin that he had found a bad husband for his daughter and a worthless purchaser for his land. Morey maltreated his wife and began trying to sell off the land for which he had no title and had not paid a cent.

To stop the latter, Baldwin brought a suit against him in December, 1878, in which he represented that Morey was claiming title to the property embraced in the contract, and prayed for a judgment decreeing that the title remained in petitioner until the terms and conditions of the contract were complied with.

In February, 1879, when the first instalment under the contract matured, formal demand was made on Morey, to which he responded that the extent of the premises was not ascertained and demanded a survey. Baldwin responded that he well knew the extent of the premises, that he had received and enjoyed possession thereof and that if he wanted a survey, he might make it himself.

Morey subsequently called on the counsel for plaintiff and told him that he didn't intend to pay for the land and was going to leave the country.

Not long afterwards, in April or May 1879, he did leave the country, and has never since been seen or heard of down to the trial of this case in 1886. Even his own counsel had no knowledge of his whereabouts and had been unable to have any communication with him since his departure.

After the filing of this suit and the disappearance of Morey, plaintiff, under advice of counsel, resumed possession of the land and has had it ever since.

The wife of Morey obtained a divorce and married again in 1880.

There is a great deal more evidence in this record, which we do not think it necessary to comment upon.

The foregoing statements of law and fact sufficiently indicate the judgment that must be rendered.

It is evident that Morey never acquired title to the land, that his possession thereof was precarious and defeasible by his failure to comply with his obligations under his contract, that he did not, and did not intend to, comply with those obligations, that his pretended excuse for non-compliance on the ground that the extent of the premises was un-

ascertained, has no force, coming from one who had taken possession under his contract; that Baldwin had the right to re-enter into possession of his property after Morey failed to comply with his contract, abandoned possession and departed for parts unknown, and is not responsible for any damages, rents or revenues.

Logically viewed, the contract has terminated by failure to comply with the conditions, but as contrary pretentions were set up, and as plaintiff is entitled to have the cloud removed from his title, judgment will be granted as prayed for.

It is, therefore, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and that there now be judgment in favor of plaintiff and against defendant decreeing that the contract involved be rescinded and declared to be null and void and of no effect, and that the reconventional demands of defendant be rejected; defendant to pay all costs in the court below and those of this appeal.