ST. PAUL, J.
On March 26, 1918, plaintiff insured his house with defendant for $3,000 with a “loss payable” clause in favor of W. P. Hall, mortgagee. On December 27, 1917, plaintiff entered into, with one Mrs. W. G. Cavell, a certain agreement which they styled “contract to sell.” On February 28, 1919, the house was destroyed by fire.
As the “loss payable” clause in favor of the mortgagee was uneonditional, defendant paid the mortgage in full, took a subrogation from the mortgagee; and proceeded to foreclose. Whereupon plaintiff sued out an injunction, *462 which the lower court perpetuated; and defendant appeals.
I.
It may be conceded for the purposes of this case that a contract of insurance may be so written that the mortgagee is protected unconditionally, whilst the owner is protected only conditionally, and that in such case the insurer on paying the mortgage may be subrogated to the latter’s rights; and the policy in this case seems to be so written.
The question therefore arises whether in this case the policy has been voided as to owner.
II.
The clause in the policy relied upon by the defendant as voiding the policy as to the owner is as follows:
“This entire policy * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership * * * or if any change, other than by the death of an insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard). * * * ”
And the fact relied upon as operating a forfeiture under said clause is the aforesaid “contract to sell,” which provides, substantially:
That the said Trichel agrees to convey by deed of warranty to the said Mrs. W. G. Cavell the following described property * * * upon /the payment to the said Trichel by the said Mrs. Oavell of $5,750 as follows: $900 cash in hand paid, and the balance at the rate of $50 per month with interest from sale. Whenever the said Mrs. Cavell shall have reduced the principal to such an amount as she can [and will] borrow [from a certain building association], said Trichel agrees to make said warranty deed, on being paid said balance. Failure of said Mrs. Gavel) to meet any payment within 60 days after the same Re-comes due, shall entitle said Trichel to annul this contract and forfeit all previous payments, as rent and liquidated damages for possession of the premises.
It is claimed by the defendant that the foregoing contract operated a change of title, or at any rate a change of interest in the assured.
The trial judge did not think so; nor do we.
III.
The eases of Barber Asphalt Co. v. St. Louis Cypress Co., 121 La. 152, 46 South. 193, and Adams Machine Co. v. Newman, 107 La. 702, 32 South. 38, are not applicable here. Those cases deal with personal property, as to which the sale is complete between the parties by their mere consent, and as to the whole world by delivery. Hence where the thipg sold has been delivered and there remains only to pay the price, it is quite immaterial what name the parties give to such price, rent or what not, the fact remains that there has been a sale and transfer of ownership.
But with real estate the case is different; neither consent, nor delivery, nor payment of price suffice to transfer the ownership; there must be a deed translative of the title. And the question in this case is whether there was such a deed.
IT.
In Geo. P. Caire v. Mutual Building & Homestead Association, No 7315 of its docket, the Court of Appeal for the Parish of Orleans held that—
A promise of sale amounts to a sale only in the sense that it entitles either party to enforce specific performance; but a promise of sale is not translative of property, and does not change the ownership of, or dominion over, the thing, even as between the parties, or put the thing at the risk of the promisee — citing McDonald v. Aubert, 17 La. 449; Bennett v. Fuller, 29 La. Ann. 663; Broadwell v. Raines, 34 La. Ann. 677; Thompson v. Duson, 40 La. Ann. 712, 5 South. 58; Baldwin v. Morey, 41 La. Ann. 1107, 6 South. 798; Collins v. Desmaret, 45 La. Ann. 108, 12 South. 121; Peck v. Bemiss, 10 La. Ann. 160; Satterfield v. Keller, 14 La. Ann. 606; Garrett v. Crooks, 15 La. Ann. 483; Knox v. Payne & Harrison, 13 La. Ann. 361.
*464 And the practical application of that doctrine in that case was that the loss of a building destroyed by the great hurricane of 1915 must fall upon the promisor and not upon the promisee.
A writ of review was applied for to this court, under No. 23193''of its docket, and the writ was refused on November 4, 1918.
In McDonald v. Aubert, 17 La. 449, the practical application of the doctrine was this : That a promise of sale made by a husband during the life of‘his wife did not transfer the title to such property, and that accordingly a deed to Such, property executed by the husband alone after the death of his wife, even though made in pursuance of said promise of sale, conveyed only his own half interest therein and not the half interest of his deceased wife.
So that a promise of sale differs widely from a sale; it does not transfer the ownership of the thing, but gives only the right to demand specific performance.
V.
In Capo v. Bugdahl, 117 La. 992, 42 South., 478, this court held that a contract reading as follows was a mere promise of sale, and not a sale, to wit:
“This is to certify that I have this day sold my house No. 1904 St. Louis St., to Thomas Capo, for the sum of $2,300, ten per cent, paid cash, balance when aot of sale is passed." (Italics ours.)
It will be observed that another deed was contemplated by the parties; hence it follows that the agreement abovesaid could not have vested title in the promisee, since “he who has once acquired the ownership oí a thing by one title, cannot afterwards acquire it by another title; unless it be to supply a deficiency in the first title.” R. C. C. art. 495.
A similar holding will be found in Legier v. Braughn, 123 La. 463, 49 South. 22; and our conclusion is that any agreement for the sale of real estáte, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another and final deed, is a mere promise of sale and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be. only a confirmation oí the first, and not indispensable for the transfer of title. And on the face of the agreement herein entered into between Trichel and Mrs. Cavell, it will be seen, that it was not to be final, but was to be followed by a formal deed under certain conditions.
Kinberger v. Drouet, 149 La. 986, 90 South. 367, is in perfect accord with the foregoing; it was there held that an option or right to purchase gave a right to demand specific performance; and that the court would enforce specific performance; indirectly, if it could not do so directly. It will be observed that the court said, not that plaintiff was the owner of the property, but that defendant should make him such, and in default thereof that the judgment of the court should do so.
VI.
Several cases are cited from other jurisdictions which seem to hold that a mere promise of sale on the part of an owner operates such a change in his interest in the property as to forfeit the insurance thereon. As to these we say simply that we decline to follow them. We think that such a doctrine is subversive of the whole theory of insurance which (in theory at least) is intended to provide protection for the assured. As we have heretofore said, the property insured remains at the risk of the insured, notwithstanding a promise to sell the same; and in dollars and cents (which is the practical side of the question) his interest in the property is precisely the same before and after his promise to sell; his risk not ceas *466 ing therein until the actual sale. In Power v. Ocean Insurance Co., 19 La. 28, 36 Am. Dec. 665, this court said:
“The nullity mentioned in the clause relied on by defendants, was, in our opinion, intended and understood by the parties for the case where by sale or otherwise an absolute -transfer or termination, of the interest of the insured should take place so as to leave him without. interest at the time of the loss.” (Italics ours.)
We think that doctrine perfectly sound; and we will follow it.
Decree.
The judgment appealed from is therefore affirmed.
Rehearing refused by the WHOLE COURT.