(132 SO. 758)

## DAVIS v. McCAIN.
No. 30621.

Feb. 2, 1931.

A. D. Keeney and Wise, Randolph, Rendall & Freyer, all of Shreveport, for appellant.

Lee & Gilmer and Thigpen, Herold & Cousin, all of Shreveport, for appellee.

OVERTON, J.

This is an action in jactitation; the slander consisting in the recordation of a deed to an undivided interest in Trilby plantation, locat-

ed in the parish of Bossier, and the recordation of certain contracts and a judgment of this court, in the suit of McCain et al. v. Hicks et al., reported in 150 La. 43, 90 So. 506. The action was converted into a petitory action by defendant, by his admitting the slander- and asserting title in himself.

The case arises out of the following facts: On September 16, 1918, S. B. Hicks, W. R. Cavett, and Joseph E. Davis, who then owned Trilby plantation, in indivision, executed the following instrument in favor of Ernest L. McCain and B. E. Jones, to wit:

"We have this day received from Messrs. Ernest L. McCain and B. E. Jones, $1,000 same being a part of the purchase price on Trilby Plantation, on which they agree to pay an additional sum of $4,000 on Thursday, 19th of Sept. 1918. An additional $10,000 to be paid Nov. 1st, 1918, and $10,000 Jan. 1st, 1919. The purchase price being $85,000, the balance in vendor lien notes as per agreement. It is further understood that in case Messrs. McCain and Jones fail to take title, the above $1,000 is to be forfeited unless the title is defective."

This instrument was supplemented on September 19, 1918, by the following agreement, executed by the parties, to wit:

"We have this day received from Ernest L. McCain and B. E. Jones the sum of four thousand ($4,000) dollars additional payment on the purchase price of the Trilby plantation which was to be paid by said McCain and Jones on this day as per agreement of September 16th, 1918. It is understood that an additional ten thousand ($10,000) dollars is to be paid November 1st, 1918, and also an additional ten thousand ($10,000) dollars January 1st, 1919, same together with the four thousand ($4,000) dollars this day paid and the one thousand ($1,000) dollars previously

paid, constituting the cash portion of the purchase price of said Trilby plantation, which purchase agreed on was eighty-five thousand ($85,000) dollars. And it is further agreed and understood that the aforesaid McCain and Jones are to give S. B. Hicks, W. R. Cavett and J. E. Davis, five vendor's lien notes for five thousand and six hundred ($5,600) dollars, each payable yearly, bearing seven (7%) per cent. interest per annum from their date, the said notes to begin maturing one year after date of taking possession by the said McCain and Jones. And it is further understood and agreed that the aforesaid S. B. Hicks, W. R. Cavett and J. E. Davis are to deliver title to the Trilby plantation, to the aforesaid McCain and Jones, January 1st, 1919, free from all encumbrances whatsoever, excepting a certain mortgage for thirty-two thousand ($32,000) dollars against said property, which is to be assumed by the said McCain and Jones as the remaining portion of the deferred part of the purchase price of said Trilby plantation."

Approximately two months after the execution of these instruments, McCain and Jones took possession of Trilby plantation by moving hands and stock on it. About a month later they became dissatisfied with their agreement, and, being unable to finance the purchase, they began moving off the plantation, and completed this undertaking prior to January 1, 1919. Immediately upon moving from the place, they demanded of Hicks, Cavett, and Davis the return of $11,500, which, under their agreement, they had paid on the purchase price of the property. This demand was refused, whereupon McCain and Jones brought suit against Hicks, Cavett, and Davis to recover the $11,500, paid by them under their agreement, on the ground that the title to the plantation was defective, and, in the event the title should be held to be good, then for the $10,500, paid beyond the $1,000 ear-

nest money, representing the first payment, made by them. This suit resulted in the rejection of the demand of McCain and Jones.

Nearly two years after the termination of this litigation, Hicks and Cavett sold to Davis their two-thirds interest in and to Trilby plantation. Following his purchase, Davis lived upon, cultivated, and improved the plantation from year to year, without any protest or the assertion of any claim whatever by either McCain or Jones; the latter not even paying taxes on the property.

About seven years after the termination of the foregoing litigation property in the vicinity of Trilby plantation suddenly increased greatly in value, due to a decision to locate in that neighborhood the site of the Third Attack Wing of the Aviation Corps. Shortly thereafter McCain and Jones filed for record in the conveyance records of Bossier parish the instruments, quoted supra, as well as a copy of the judgment of this court in McCain et al. v. Hicks et al. About a month later, McCain filed for record in that parish a deed from Jones, conveying to McCain all of Jones' rights, title, and interest in Trilby plantation.

It is the recordation of these instruments that Davis contends is a slander upon his title as owner of the plantation. The contentions of McCain, after admitting the slander and Davis' possession of the property, are that he is the owner of the plantation by virtue of the two instruments, quoted above, the deed conveying Jones' interest to him, and the judgment of this court in McCain et al. v. Hicks et al., which McCain asserts is res judicata as to Davis' claim of ownership, and a plea of estoppel against that claim, based upon the pleadings in the suit in which the foregoing judgment was rendered.

The two instruments, which we have quoted in full above, constituting the agreement between the parties, show that the instruments are not translative of ownership, but that they evidence an intention to transfer title by a deed to be passed on a future day. This is apparent, when it is recalled that the agreement contemplates the payment of the balance of the cash portion of the purchase price at the time of the delivery of the deed, the execution of vendor lien notes, aggregating $28,000, and the assumption of a $32,000 mortgage. Such an agreement is a mere promise of sale, and not a sale.

In Trichel v. Home Insurance Co., 155 La. 459, 99 So. 403, 404, it was held that title to immovable property is not transferred by consent, or delivery, or payment of the price, but alone by a deed translative of ownership. The court, in that case, after reviewing cases on the question before it, said: "Our conclusion is that any agreement for the sale of real estate, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another and final deed, is a mere promise of sale and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be only a confirmation of the first, and not indispensable for the transfer of title." To the same effect may be cited the cases of Campbell v. Richmond Ins. Co., 156 La. 455, 100 So. 679; Pruyn v. Gay, 159 La. 981, 106 So. 536; Succession of Fay, 161 La. 1022, 1029, 109 So. 824. That the agreement in this case is a mere promise of sale, and, as such, is not translative of property, is also supported by the following cases: McDonald v. Aubert, 17 La. 448; Knox v. Payne & Harrison, 13 La. Ann. 361; Garrett v. Crooks, 15 La. Ann. 483; Broadwell v. Raines, 34 La. Ann. 677; Thompson v. Duson, 40 La. Ann. 712, 5 So. 58; Baldwin v. Morey, 41 La. Ann. 1105, 6 So. 796; Capo v. Bugdahl, 117 La. 992, 42 So. 478;

Page v. Loeffler, 146 La. 890, 84 So. 194, 22 A. L. R. 563.

 While a promise of sale is not translative of property, yet it suffices to give to the promisee the right to specific performance, provided he has complied with his part of the contract. McDonald v. Aubert, 17 La. 448; Knox v. Payne & Harrison, 13 La. Ann. 361. McCain does not assert that he is entitled to specific performance in this case, but, if he had, it would be sufficient to say that he is woefully in default, not having paid even one-half of the cash consideration that was to have been paid before the execution of the deed, and not having done anything to fulfill his contract for a period of over eleven years. Under such circumstances he could not have enforced specific performance. Joffrion v. Gumbel, 123 La. 391, 48 So. 1007.

Notwithstanding that, under the jurisprudence in this state, the agreement between the parties was a mere promise of sale, and not a sale, McCain urges that this court, in the case, entitled McCain et al. v. Hicks et al., 150 La. 43, 90 So. 506, mentioned above, held that the contract was a sale, and urges that the judgment is res judicata as to Davis' present contention that it was not a sale.

 The object of each of the two suits is different; the first being a suit, the sole object of which was to recover the $11,500 paid, and, in the alternative, $10,500 of that sum, and the object of the second is to force McCain either to admit Davis' title or to establish title in himself, which latter he is now attempting to do. In the first suit, the court could not decree that the contract was a sale, without creating title, and it is not the function of courts to create title, but to recognize it, when established, and the court did not so decree, but merely rejected plaintiffs' demand, which, as said, was for a moneyed judgment.

It is true that the defendants in that case, to show why, on the plaintiffs' forfeiting the $1,000 earnest money, paid at the time of the execution of the first instrument, of date September 16, 1918, alleged, in article 11 of their answer, that the question of earnest money disappeared from the agreement and became merged in the plaintiffs' promise, of date September 19, 1918, contained in the second instrument, quoted above, which, they alleged, was an absolute and unconditional promise to buy, and that the court, in passing upon the plaintiffs' right to recede from the agreement, by forfeiting the earnest money, said: "The moment that a part of the purchase price, in addition to the earnest money, is paid, the promise to sell becomes merged into a contract of sale, and the privilege of withdrawing is at an end. The acceptance of the sale by payment of part of the purchase price perfects the contract, and the rights and obligations of the parties thereto become fixed under the law applicable to sales."

 This language of the court, however, is as appropriate to promises of sale as it is to sales. When read in the light of the pleadings, which is permissible (Succession of Regan, 12 La. Ann. 156; Peniston v. Somers, 15 La. Ann. 680; Succession of Durnford, 1 La. Ann. 92), it becomes clear that what the court had in mind was to sustain the defendants' contention that the payments, following the payment of the earnest money, converted the agreement, not into a sale, but into an absolute promise of sale, from which there could be no withdrawal. That was the question, as relates to the right, on forfeiting the earnest money, to recover the balance paid, presented by the pleadings, and none other.

As to plaintiff's plea of estoppel, that seems to rest chiefly on a motion to strike out, filed in the first suit by the defendants therein, in which they refer to the agreement as repre-

senting a "completed sale and not a sale in which earnest money was given." As completed sales are not made with the giving of earnest, it is evident that the defendants therein had in mind an absolute promise of sale, and not an actual sale. The statement, viewed in connection with the rest of the pleadings, makes this clear.

In closing we may say that defendant's entire course of conduct shows an intention to abandon his contract to purchase, during a period of years, and until the plantation suddenly enhanced in value. He failed to pay all of the cash portion of the purchase price and to demand a deed, and consequently did not give the vendor's lien notes and assume the $32,000 mortgage, called for by his contract, moved off the plantation, tacitly permitted Davis to move on the property and cultivate it for years, without demanding rent from him, and paid no taxes on the property, but apparently left that for Davis to do. In these circumstances the equities of the case hardly support his contentions.

The judgment of the lower court recognizes Davis as the owner of the plantation, and rejects McCain's demands.

The judgment is affirmed.