Plaintiff alleged that he purchased a forty acre tract of land from defendants on September 27, 1937; that he completed payment for same on November 27, 1943 and that the defendants had slandered his title by the recordation of a mineral lease on December 29, 1943 in favor of one J. R. Hayden, and signed by defendants, and further by the recordation, on December 30, 1943, of a cash deed signed by defendants, purporting to convey the property in question to plaintiff but reserving to defendants an undivided one-half interest in all the minerals in or under the property.
Plaintiff prayed that defendants be ordered to assert such rights as they might have to the property; for judgment ordering the cancellation of the title of defendants to the one-half mineral interest and for $500 in damages.
Defendants, after their exception of no cause or right of action was overruled, filed an answer admitting the execution of the instrument dated September 27, 1937, but denied that any title to the land was conveyed or intended to be conveyed. Defendants admitted the recordation of the lease on December 29, 1943 and the execution and recordation of the cash deed and asserted that the reservation was made in accordance with the understanding reached with plaintiff at the time a delayed payment on the September 27, 1937 instrument was received from plaintiff on May 2, 1942.
Defendants further asserted that plaintiff accepted the cash deed, containing the mineral reservation complained of in his petition, and either filed same for record or caused it to be filed for record, and pleaded this acceptance as a bar to any contention by plaintiff that defendants were not the owners of the undivided one-half mineral interest therein reserved to them.
Defendants prayed that the demands of the plaintiff be rejected and that there be judgment in their favor, as plaintiffs in reconvention, decreeing them to be owners of an undivided one-half mineral interest in the property described in the petition.
The District Court held that the instrument dated September 27, 1937 conveyed title to the property. Plaintiff's objection to oral testimony offered by defendants to prove the May 2, 1942 delayed payment was received on condition that defendants would reserve one-half the minerals was sustained and judgment was rendered recognizing plaintiff as owner of the tract in controversy and decreeing the cash deed recorded December 30, 1943, with mineral reservation, to be null and void. Defendants appealed.
The instrument attached to plaintiff's petition and described as his deed to the land reads as follows:
"Shreveport, Louisiana
"Sept. 25, 1937.
"State of Louisiana
"Parish of Caddo,
"Received for Jake Stephens, resident of Bossier Parish, Louisiana, Seventy ($70.00 Dollars, representing the first of six annual payments of Seventy Dollars each, to apply on the purchase of a tract of land in Bossier Parish, containing forty acres, being: All that part of the Southeast (SE 1/4) Quarter of Southeast (SE 1/4) Quarter and fractional Northeast (NE 1/4) Quarter of Southeast (SE 1/4) Quarter sufficient to make forty acres lying East of the present public road from Midway to Rocky Mt. all in Section Six, Twp. Twenty North (20 N.) Range *Page 685 
Twelve (12 W.) West, Bossier Parish, Louisiana.
"The total consideration for this sale is Four Hundred Twenty Dollars ($420.00) including carrying charges.
"Estate of L.C. Bulkley "Signed by, — Ralph B. Eglin "Ralph B. Eglin "Agent."
Plaintiff did not make any further payment on the land until May, 1942, but did on the dates shown on each, make that payments represented by the following receipts:
"May 2d 1942 "Received from Jake Stephens Seventy dollars constituting the second payment on 40 acres in Sedction 6 T 20 R 20, Bosier Parish, Louisiana. Contract of sale dated Sept. 25, 1937. "Total consideration .............................. $420.00 "Total Paid to date .............................. 140.00 ------- "Balance due ...................................... $280.00
"Signed — Ralph B. Elgin "Agent "Estate of L. C. "Bulkley."
"10-9-1943 "Received from Jake Stephens seventy dollars representing third payment in like amount received on purchase proce of that part of the SE 1/4 of SE 1/4 lying EAst of the public road from Midway to Rock Mount in Sec. 6 T 20 R 20 Bossier Parish, La.
"Total consideration .............................. 420.00 "Paid to date ..................................... 210.00 ------ "Balance due ...................................... 210.00
"Signed — Bulkley Estate " " Ralph B. Eglin."
"11-27-1943 "Receive of Jake Stephens $210.00 being balance on contract of sale for 40 acres in Bossier Parish.
"Signed — Bulkley Estate " " Ralph B. Eglin."
Some twenty-four days after the last payment was made, defendants' agent received, through the mails, the following letter:
"Benton, La. "Dec. 21, 1943. "Mr. Ralph B. Eglin "Dear Sir. "I paid a note on my land on Nov. 27 and you told me you were going to send me my deed within a few day. But I have not received it yet. "Thanking you for to send it.
"Jake Stephens "Rte. 1, Bx. 73 "Benton, La."
On December 22, 1943, the day Mr. Eglin received the above letter, plaintiff came to Mr. Eglin's Office in Shreveport, where a standard form cash deed, covering the tract, and containing the reservation of the one-half mineral interest, was prepared and delivered to plaintiff. Plaintiff testified that he received this deed through the mail, but the testimony is convincing that this deed was delivered to him in Mr. Eglin's office. On December 30th plaintiff took this deed to Benton and paid for its filing and recordation at the Recorder's Office.
Paragraph one of plaintiff's petition recites that he purchased the land in question from defandants on September 27, 1937, "all of which will be more fully shown by that certain deed recorded in Conveyance Book 132 at page 452 of the Conveyance Records of Bossier Parish, Louisiana, a certified copy of said deed annexed hereto and made a part hereof." The document so referred to as a deed is the instrument of that date reproduced above.
The only language in the instrument, described by plaintiff as a deed, which refers to a transfer or sale of property is the last sentence, which reads: "The total considerations for this sale is Four Hundred Twenty Dollars ($420.00) including carring charges." Counsel for plaintiff contends that this language places the present case within the same category as the case of Saunders v. Bolden, et al,155 La. 136, 98 So. 867. The instrument relied upon in the Saunders case is short and reads as *Page 686 
follows: "'This is to certify that I have sold the Judie Lewis place to Abe Bolden, and he has 10 years to pay for same: $50 per year.'"
The two instruments ar aloke in that neither is signed by the purchaser, but unlike inasmuch as the document relied upon by Bolden contains the statement by the owner in so many words that he had sold the Judie Lewis place and provided no basis for a holding — or even a contention — that the document was in the nature of a contract of sale to be concluded at a later date. The use of the past tense "have sold" makes it plain that the document was not a recordation of a promise to sell in the future as in true in the receipt signed by defendants' agent on September 25, 1937.
The receipt relied upon by Stephens contains two sentences and the meaning of the instrument can only be gained by a reading of the whole instrument, each of the sentences being explanatory of the other.
The first sentence refers to six annual payments of $70 each. The second sentence has the effect of naming the total of these six payments and to include the stipulation that the payments included carrying charges. The meaning intended to be conveyed by the second sentence — when read in connection with the first sentence — would not have been changed had the word "contemplated" been used befor the word "sale". In any event, the document contains no words conveying title or statement that the land was sold.
The instrument before us is somewhat similar to the document signed by defendant Cheramie and considered by the Supreme Court in the case of Terrebonne v. Cheramie, 151 La. 929,92 So. 388. Thecase was appealed to the Court of Appeal for the First Circuit, which in turn applied to the supreme Court for instructions "as to the force and effect of the following receipt, issued by defendant to plaintiff, when the latter paid the former $100, viz.:
"Cut Off P.O., La., 11/3, 1919. Received the sum of $100.00 one hundred dollars, paid on account on house and land and everything thereto attached, sold for the sum of $500.00 Delivery Mar. 1, 1920. To Dominic Terrebonne. (Signed) Herve Cheramie. Witnesses: (Signed) Louis Gaidrai. Herbert Terrebonne."
The Supreme Court answered: "Our answer to the main question is that the document, on its face, represented nothing more than a promise to sell and a receipt for $100 as earnest money."
In discussing the case further, the Supreme Court noted that the purpose and effect of the instrument must be tested with regard to the rights and obligations of the promisee, as well as with regard to the rights and obligations of the promisor, and noted that the instrument did not obligate the promisee to pay the balance of the purchase proce or to buy the property and that all he stood to lose was "the $100 that he had paid."
In the case of Davis v. McCain, 171 La. 1011,132 So. 758, the Supreme Court of Louisiana held that a document in the form of a receipt for $1,000, "same being a part of the purchase price on Trilby Plantation" and which further recited the time of payment, terms, etc. of a toal purchase price, coupled with the delivery of a second receipt for $4,000 described as additional payment on the purchase price of the Trilby plantation" did not constitute a sale of the plantation, noting that the two instruments "constituting the agreement between the parties, show that the instruments are not translative of ownership, but that they evidence an intention to transfer title by a deed to be passed on a future day."
The Davis opinion contains the following quotation, with approval, from the case of Trichel v. Home Insurance Co.,155 La. 459, 99 So. 403: "'Our conclusion is that any agreement for the sale of real estate, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another the final deed, is a mere promise of sale and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be only a confirmation of the first, and not indispensable for the transfer of title'".
In the case of Ober v. Williams, et al., 213 La. 568,35 So.2d 219, 221, the Supreme Court again held that a written instrument does not convey title to real estate when it *Page 687 
contains no language directly conveying title and when a reading of the instrument shows that a subsequent deed is intended by the parties. In the Ober case, the instrument signed by the owner contained a description of the property upon which the prospective purchaser agreed to erect a three room dwelling house and later to make six annual payments. There the Court held that such an agreement "is nothing more or less than a promise to sell and purchase which did not effect a retrospective transfer of ownership to White by his performance of its conditions. On the contrary, fulfillment of the conditions of the contract vested only in each party a right to enforcement by specific performance under Article 2462
of the Civil Code."
In the Ober case, the Supreme Court reviewed the jurisprudence and quoted the following from the case of Peck v. Bemiss, 10 La. Ann. 160: " 'This reciprocal promise of sale did not make Peck the owner of the land. It gave him only the right of becoming so at a future time. It created in his favor an obligation binding upon Overton, and by which, if he refused voluntarily to comply, he could be judicially constrained to a specific performance or subjected, if he had put it out of his own power to comply, to an action for damages. Until a voluntary or forced execution of the promise, the ownership did not pass to Peck.' "
It might be argued that, although the 1937 receipt had not the effect of transferring title, yet when plaintiff complied with the condition, namely, paying the balance of $420, such a compliance had a retrospective effect, under Article 2041 of the Civil Code, to the day the 1937 contract was executed. This argument is answered by the Supreme Court in the Ober case, supra, with a statement that the language of Article 2041 "merely means that the rights of the obligor, upon compliance, revert to the date of the contact but it offers no foundation for an argument that, in cases involving contracts to sell and purchase immovable property conditioned upon the happening of an event or the doing of certain things, the ownership is transferred retroactively by the performance of the condition. On the contrary, compliance with the condition only renders the contract executory; makes the reciprocal promises absolute and establishes the rights and liabilities of the parties as of the date of the agreement."
The above authorities confirm us in the conclusion that the September, 1937 document is not a deed and did not vest title in the plaintiff, as was alleged in the petition. Since the petition and attached documents fail to disclose title in plaintiff, the exception of no cause or right of action should have been sustained. However, the case has been tried and we have concluded to pass on the merits.
The record shows that the property remained assessed to defendants until after the execution of the December, 1943 deed, indicating that neither plaintiff nor defendants considered that ownership was transferred by the 1937 receipt. The fact that plaintiff, when he completed the payment of $420, asked for, received, and caused to be recorded a deed in regular form, indicates that he did not consider the 1937 receipt as a conveyance of title.
An examination of this instrument and our study of the subsequent action of the parties as disclosed by the record lead us to the conclusion that the above quoted instrument did not convey to plaintiff title to the land described.
The judgment appealed from is voided and judgment is now rendered rejecting plaintiff's demands at his costs. *Page 688