## FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF ALEXANDRIA, Plaintiff-Appellant,

v.

## Walter BOTELLO and Jane Cameron Botello, Defendants-Appellees.

No. 83–4288.

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1984.

Stafford, Stewart & Potter, Grove Stafford, Jr., Alexandria, La., for plaintiff-appellant.

Montgomery, Barnett, Brown & Read, Stanley McDermott, Jr., New Orleans, La., for defendants-appellees.

Before BROWN, GEE, and WILLIAMS, Circuit Judges.

PER CURIAM:

After careful consideration of the arguments advanced in briefs and at oral argument, we conclude that the law of Louisiana is controlling and that it was correctly applied by the experienced trial judge to his findings and in his conclusions, both appended as Appendix A. On that basis, his judgment is

AFFIRMED.

---

APPENDIX A

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

FIRST FEDERAL SAVING & LOAN
ASSOCIATION OF ALEXANDRIA

VS.                                          CIVIL ACTION NO. 82–0211

WALTER BOTELLO, ET UX

This is a suit to foreclose on a mortgage because of an alleged violation of the "due on sale" clause. Plaintiff is a lending institution and the questions at issue all coalesce into the ultimate one of whether the agreements to buy and sell executed by defendants and subsequent transferees constitute a "sale or transfer of the property" sufficient to trigger the "due on sale" provision of the specific mortgage here involved.

### FINDINGS OF FACT

(1) This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1332. Plaintiff is a Louisiana corporation and has its principal place of business in Alexandria, Louisiana. Each of the defendants is a resident of the State of California.

(2) On December 29, 1972 Walter Botello and Jane C. Botello, residents of Los Angeles, California, gave First Federal Savings & Loan Association of Alexandria a mortgage on real estate situated in Rapides Parish, Louisiana, described in the act of mortgage attached to the petition as Exhibit "B".

(3) The mortgage was for $1,125,000, providing interest at the rate of 8½% per annum from date until paid, 10% of the amount of principal and interest as attorney's fees in the event of default or if suit

was filed due to a violation of the terms of the mortgage, all costs of those proceedings.

(4) The mortgage contained a provision which has become commonly referred to as a "due on sale" clause, the relevant portion reading as follows:

"The Association may at its option declare the entire indebtedness of the mortgagor, present or future, immediately due and payable, together with interest costs and all expenses, and may immediately thereafter proceed to foreclose the mortgage hereinabove stipulated in its favor by executory process or otherwise upon the happening of any one of the following events or conditions:

d) Upon the *sale or transfer* of this property without the written permission of the Association, which shall not be granted in any event unless such transferee shall specifically assume payment of the mortgage herein stipulated and shall otherwise comply with the obligations imposed upon him by this act and by the Bylaw and Regulations of the Association." (emphasis added)

(5) During the year 1981, defendants attempted to obtain the approval from plaintiff to sell the mortgaged property to Baena Mar, S.A., a Panamanian corporation. Plaintiff refused this request.

(6) Subsequently, defendants entered into an "Agreement to Buy and Sell" the subject tract to Baena Mar, S.A., for $1,442,811.47, payable in the sum of $5,000 at the time of the signing of the agreement.

(7) The passing of the act of sale was deferred until November 1, 1997. The agreement provided that Baena Mar, S.A. would pay defendants the sum of $10,316 per month, commencing August 1, 1981. Baena Mar, S.A. was granted the right to occupy the property and to receive the rent due on the property. Baena Mar, S.A. further agreed to keep the building in good repair and insured, to provide rental insurance, pay ad valorem taxes and assessments against the property, and to pay all bills to repair, maintain and upkeep the buildings and to satisfy all obligations due by seller under the lease of the property. Baena Mar, S.A. also assumed all risk of loss and destruction of the building and agreed to make any necessary repairs to the building.

(8) The monthly payments to keep the contract in force is applied to the payment of the first mortgage and an insignificant sum of $33.00 to the Botellos. The purchase price (except for $5,000) has not been paid.

(9) On July 6, 1981, Baena Mar, S.A. entered into an "Agreement to Buy and Sell" with Tricot, Ltd., a California limited partnership, whereby Baena Mar, S.A. agreed to sell or transfer the mortgaged property to Tricot, Ltd. for $2,440,000. Tricot, Ltd. was to pay to Baena Mar, S.A. the sum of $13,320 per month beginning September 1, 1981, and to continue such payments until June 1, 2024, at which time Tricot, Ltd. would make one final payment in the amount of $8,805.56, and at which time the formal act of sale would be passed by Baena Mar, S.A. to Tricot, Ltd. This agreement is "Exhibit D" and is attached to the petition.

(10) After learning of these transactions, plaintiff made demand upon the defendants for an explanation.

(11) Plaintiff argues that the agreements to "buy and sell" are in reality alienations, sales and transfers of the property done without the knowledge or permission of plaintiff, and done in violation of the terms of the mortgage which has accelerated the balance due on the note.

(12) Having not received any satisfaction from the defendants, plaintiff filed this suit seeking the principal balance due of $956,-856.77, with interest at the rate of 8½% per annum from default until paid, and attorney's fees in the amount of 10% of principal and interest, and all costs of these proceedings, and for recognition of its mortgage.

(13) Admittedly, the contract to sell which is the subject matter of this litigation, was prepared and designed to permit a change of administration of the property without activating the "due on sale" provision. Just as admittedly, this suit was insti-

tuted to prevent assumption of a low-interest rate mortgaged debt. Plaintiff insists that what we have here, in fact, is a credit deed, the actual written deed as such to be executed after satisfaction of the purchase price.

## CONCLUSIONS OF LAW

(1) Louisiana law provides for the enforcement of a "due on sale" provision in a mortgage; L.S.A.–R.S. 6:837(A) which provides as follows:

"Whenever property is subject to a vendor's privilege or mortgage in favor of an association and, without the written consent of the latter, the property is sold or transferred by contract, either with or without the assumption of the association loan, the loan and obligations held by the association shall at the option of the association immediately mature and become at once subject to enforcement according to law and to the terms of the loan contract. In all such cases where the loan was assumed by the purchaser, even without the consent of the association, the purchaser will be and remain liable in solido with the original borrower on the loan."

(2) Federal legislation and jurisprudence further support the validity of a "due on sale" provision. *Fidelity Federal Savings & Loan Association v. de la Q[C]uesta,* [458 U.S. 141], 102 S.Ct. 3014 [73 L.Ed.2d 664] (1982).

(3) Defendant has no dispute with plaintiff's assertion that a "due on sale" clause, if violated, is enforceable and renders the entire balance of the mortgage due and payable at the option of the holder.

(4) In order to accelerate the maturity of the note pursuant to the "due on sale" clause of the act of mortgage, plaintiff must show that there was a "sale transfer or alienation" of this property without the written permission of plaintiff. Plaintiff refused to grant permission without a renegotiation of the loan with an increased interest rate. This court must determine, therefore, whether the agreement to buy and sell, executed by the plaintiff, constituted a sale transfer or alienation in violation of the provisions of the act of mortgage.

(5) An agreement for the sale of real estate which contemplates the passing of the title at some future date, and which contains all the elements of a sale, is merely a promise of sale, unless the intention of the parties clearly indicates that the agreement is to constitute a completed sale.[1]

(6) The expression "contract *to* sell" has been adopted by the Louisiana jurisprudence. It is a clear expression meaning an agreement to buy and sell where the parties are "looking forward to a sale," but which is not yet a sale as it does not transfer ownership.[2]

(7) The case which, in addition to *Trichel v. Home Ins. Co.,* 155 La. 459, 99 So. 403 (1924), best sets forth the firmness of Loui-

1. *Noto v. Blasco,* 198 So. 249 [429], 432 (La. App. 1st Cir.1940). The rule is well established in the Louisiana jurisprudence. *See* Smith, An Analytical Discussion of the Promise of Sale and Related Subjects, Including Earnest Money, 20 La.L.Rev. 522, 543 (1960): "The rule that an agreement for the sale of an immovable where the parties contemplate a formal act of sale at a later date, is to be treated as a contract to sell or convey the property at the date agreed upon is perhaps a sound one … The chances are that most laymen would not count themselves as owners of an immovable until the accomplishment of an act of sale." *See also Davis v. McCain,* 171 La. 1011, 132 So. 758 (1931); *Campbell v. Richmond Ins. Co.,* 145 La. [156] 455, 100 So. 679 (1924); *Trichel v. Home Ins. Co.,* 155 La. 459, 99 So. 403 (1924); *Smith v. Hussey,* 119 La. 32, 43 So. 902 (1907); *St.*

*Landry Loan Co. v. Etienne,* 227 So.2d 599 (La.App. 3rd Cir.1969).

2. *See Bornemann v. Richards,* 245 La. 851, 151 [161] So.2d 741 (1964), noted in 25 La.L.Rev. 569 (1965). *See also Scott v. Apgar,* 238 La. 29, 113 So.2d 457 (1959); *Davis v. McCain,* 171 La. 1011, 132 So. 758 (1931); *Buckman v. Stafford, Derbes & Roy, Inc.,* 167 La. 540, 119 So. 701 (1929); *Pruyn v. Gay,* 159 La. 981, 106 So. 563 [536] (1925); *Trichel v. Home Ins. Co.,* 155 La. 459, 99 So. 403 (1924); *Gibsland Supply Co. v. American Employers Ins. Co.,* 242 So.2d 310 (La.App. 2d Cir.1970); *St. Landry Loan Co. v. Etienne,* 227 So.2d 599 (La.App. 3d Cir.1969); *Chicago Mill and Lumber Co. v. Ayer Timber Co.,* 131 So.2d 635 (La.App. 2d Cir.1961).

siana jurisprudence that an agreement to sell is not a sale, is *Gibsland Supply Co. v. American Employers Ins. Co.,* [La.App.] 242 So.2d 310 (1970). In that case the vendor had actually signed a cash deed for $10,000 for the sale of the property, but the deed was not to be delivered until the purchaser had paid in full for the property. The court, following the long line of jurisprudence, held that there was only an agreement giving rise to the right of specific performance and not a transfer of ownership.

(8) In *Trichel v. Home Ins. Co.,* supra, the argument was advanced as in this case, that other jurisdictions regard the contract to sell as a sale. The Supreme Court of Louisiana rejected this argument:

> "Several cases are cited from other jurisdictions which seem to hold that a mere promise of sale on the part of an owner operates such a change in his interest in the property as to forfeit the insurance thereon. As to these we say simply we decline to follow them."

(9) There has been a modest down payment, and the owner is not escaping with his equity leaving the mortgagee with a below market interest rate mortgage. It is indisputable under Louisiana law that title has not passed. The parties can cancel this agreement tomorrow and title is in the Botellos just as it has always been, or the purchaser can discontinue making the monthly payment and it comes to an end, and without the necessity of the execution of any deed or other instrument title remains in the Botellos subject to the mortgage in favor of the plaintiff.

### CONCLUSION

We, therefore, conclude that there has been no violation of the "due on sale" clause, and that this suit should be dismissed.[3]

---

**3.** Defendants called Mr. Joseph Bologna as an expert on real estate law. Counsel for plaintiff entered a timely objection. The Court permitted the witness to testify, subject to the exception. We now sustain the exception. Courts must be careful not to allow trials such as this to become battles of experts on the respective sides concerning matters of law. It is the obligation of the court and the court alone to construe the documents and their legal effect. We have disregarded the experts' opinions in their entirety.

An appropriate judgment is to be submitted, on notice, forthwith.

THUS DONE AND SIGNED in Chambers on this the 8th day of April, 1983, at Lake Charles, Louisiana.

/s/Edwin F. Hunter, Jr.
EDWIN F. HUNTER, JR.
United States Senior District Judge