**WILLIS v. HAMILTON et al.** *

No. 5236.

Court of Appeal of Louisiana. Second Circuit.

June 2, 1936.

*Rehearing denied June 26, 1936.

Cook, Cook & Egan, of Shreveport, appellant for C. M. Anthony.

Lester Wilson, of Shreveport, for appellants, Hamilton and others.

George T. McSween and Edw. Barnett, both of Shreveport, for appellee.

**TALIAFERRO, Judge.**

Plaintiff brings this petitory action to recover from defendants' possession and to have his own title thereto recognized, the following described land in Caddo parish, La.:

"All that part of Lot 'A' in Plot One of the Hatcher Subdivision in the W½ of the NW¼ of Section One, Township Seventeen North, Range Fifteen West, Caddo Parish, Louisiana, that lies south of Lake Shore Drive, said lot containing approximately five acres and having a frontage on Lake Shore Drive of 133 feet by a depth on the West line of approximately 1658. Map of said subdivision recorded in Plat Book 250 on page 488 of the Land Records of the said Caddo Parish, Louisiana."

He alleges that he acquired the land by purchase from C. M. Anthony on August 6, 1935, and that defendants' possession of same is without right or title.

Defendants admit that they are in the physical possession of the property, but deny plaintiff's asserted ownership thereof. They aver that on May 18, 1933, J. W. Hottle, now deceased, and C. M. Anthony entered into a sale agreement wherein Anthony agreed to sell to Hottle and he agreed to buy the above-described tract of land for the price of $550, of which amount $150 was paid in cash, the balance being payable in monthly installments of $11. This agreement, which is attached to and made part of defendants' answer, further provides:

"That, for the considerations hereinafter set forth the said party of the first part hereby agrees and binds himself, his heirs and assigns forever to sell and does by these presents sell unto the said party of the second part who agrees and binds himself to purchase and who does by these presents purchase the following described property and on the terms and conditions hereinafter set forth."

It is also stipulated therein that when one-half of the purchase price is paid, Anthony would execute a warranty deed conveying the property to Hottle, the balance of the price to be evidenced by his note, secured by vendor's lien on the land, which was to be of the same tenor and effect "as to payments" as was provided .

in the original contract. It is further stipulated that should Hottle default in making two consecutive payments, Anthony, at his option, would have the right to declare the contract void and all payments made thereunder prior to default would then be "forfeited as rental on said property and liquidated damages for the violation" thereof. Hottle was given the right to take possession of the land and agreed to pay all taxes assessed against it subsequent to the date of the agreement.

Defendants further pleaded that the terms of the contract relative to the making of monthly payments were not observed by the parties thereto; that payments on the price were irregularly made to and accepted by Anthony; that at one time a payment to cover an entire year was made; and that this mode and method of making said payments was consented to and acquiesced in by Anthony. They aver that they have paid on the contract price the sum of $370, leaving a balance due thereof of only $180, which they are now ready, able, and willing to pay; that Anthony never made any demand on them to strictly carry out the terms of the contract, but, on the contrary, assured them that the manner in which they were complying therewith was satisfactory to him. They aver that after taking possession of the land under the contract, they expended the sum of $800 for improvements thereof. The contract relied on by defendants, the widow and sole heir of J. W. Hottle, was registered in the records of Caddo parish subsequent to the registry of the deed from Anthony to plaintiff. Hence, this lawsuit.

Anthony was called in warranty by the defendants and judgment against him for $1,170 was prayed for. This amount is made up of the alleged value of said improvements, plus $370 claimed to have been paid on the contract price.

Exceptions of no cause and no right of action to the call in warranty and a motion to strike out, filed by Anthony, were overruled. They are urged here. Answering, Anthony admits execution of the contract with Hottle, alleged upon by defendants, but denies that they are entitled to the relief by them prayed for. He denies that one-half of the price was paid by Hottle or defendants, but admits the following payments to him:

| | | |
|---|---|---|
| Initial payment...May 18, 1933 | | $150.00 |
| September 30, 1933 | | 33.00 |
| November 7, 1933 | | 132.00 |
| March 15, 1935 | | 11.00 |
| | Total | $326.00 |

He avers that no interest was paid on those installments of the price in arrears and that taxes against the property were not paid by defendants, as they were obligated to do. He alleges that on the day he sold the property to plaintiff, defendants were in arrears more than two monthly payments, and that he then availed himself of the option given him in the contract and declared same void. In reconvention, he sues defendants for $75, the alleged value of timber cut and removed by them from the land.

Plaintiff was recognized to be the owner of the land in controversy and defendants were ordered to deliver possession of same to him. There was judgment in favor of defendants and against Anthony on the call in warranty for $669, with legal interest from judicial demand. Defendants and Anthony prosecute appeals.

In this court Anthony filed an alternative motion to remand, based upon the following facts alleged therein: That in the fall of 1934, J. W. Hottle sold to Dr. W. V. Thompson all of his rights in the contract of purchase which is the subject of this litigation and, in fact, delivered said contract to Thompson, which remained in his possession until after this litigation began and after defendants had answered and called Anthony in warranty; that thereafter defendants repossessed themselves of their copy of the contract from Dr. Thompson, with the agreement to reimburse him the $50 he paid Hottle therefor, in the event defendants were successful in this suit. These averments of fact are corroborated by Thompson's affidavit, attached to the motion. Mover's position is that when defendants answered, they were wholly without interest in said suit and without any claim involving the property or the contract in question; that such rights as defendants did acquire thereafter were acquired through the contingent purchase of a litigious right approximately a month after they answered the suit. The prayer of the motion is that should this court not find the money judgment rendered against Anthony to be erroneous, the case

be remanded for the purpose of ascertaining if the facts alleged in said motion are well founded; and, finally, if found to be true, that recovery by defendants be limited to $50, the amount they conditionally agreed to pay Thompson for surrender of the contract.

We do not think the motion, supported as it is, discloses a state of facts that warrants remanding of the case to take testimony thereon. It is not alleged that the purported sale to Thompson was in writing. This would be necessary to effectuate investment in Thompson of Hottle's rights under the contract with Anthony. Title to and real rights affecting immovable property are involved. The contract, alleged to have been sold, has been placed of record. It discloses nothing to indicate that Thompson ever had any interest in or to it. The most that can be said of the matter is that probably Thompson loaned Hottle $50 against the contract and had the instrument itself delivered to him for his protection. It is unthinkable that all rights under the contract, shown to have a value of around $700, should be sold for the bagatelle of $50. Hottle and defendants lived on the property continuously after the supposed sale to Thompson and, so far as the record reveals, their ownership and possession were never challenged by Thompson or any other person until the present suit was filed. These facts negative the allegations that the contract was sold. The motion is not well founded and is denied.

■ The exception of no cause and no right of action and motion to strike out, filed by Anthony to the call in warranty, are predicated upon the proposition that as the land was not sold by him to Hottle, but was the subject of a promise of sale, no right lies to implead him as warrantor. He contends that if any action lies against him, it is for breach of contract. We do not think this position well founded. The above excerpt from the contract discloses that in addition to the agreement on the part of Anthony to sell to Hottle, he declared that he "does by these presents sell unto the party of the Second part" the land in dispute, and the party of the second part (Hottle) in language as unambiguous, declared that he purchased the same on the terms and conditions set out in the contract. The price therein fixed was definite and Hottle gave his note for the deferred part thereof. A vendor's lien was super-

induced thereby. Possession was delivered, vendee agreed to pay all taxes subsequently accruing, and improved the property as owner. It is true that it is stipulated that when one-half of the price is paid, Anthony would then be obligated to execute deed to Hottle, yet it seems clear to us that had all the price been paid and other obligations of the grantee discharged, the original contract of itself would have been sufficient to effect transfer of the title. Any subsequent deed between them, as was said in Trichel v. Home Insurance Company, 155 La. 459, 99 So. 403, 404, would have been "only a confirmation of the first, and not indispensable for the transfer of title."

The following Codal articles are pertinent to this discussion:

"Eviction is the loss suffered by the buyer of the totality of the things sold, or a part thereof, occasioned by the right or claims of a third person." Civil Code, art. 2500.

"Warranty may be of two kinds, real or personal.

"Real warranty is that which arises in real or hypothecary actions; as when a purchaser is sued in eviction of an immovable property which has been sold to him." Code Practice, art. 379.

"When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against the seller:

"1. The restitution of the price.

"2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.

"3. All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the original plaintiff.

"4. The damages, when he has suffered any, besides the price that he has paid." Civil Code, art. 2506.

"The seller is bound to reimburse, or cause to be reimbursed, to the buyer, by the person who evicts him, all useful improvements made by him on the premises." Civil Code, art. 2509.

We think that for all legal intents and purposes, the property was "sold" to Hottle and that his widow and heir have the right to call upon Anthony as warrantor to indemnify them for the losses they have and will sustain as a consequence of their evic-

tion therefrom, due to his wrongful act. The warrantee is entitled to recover the damages suffered by him in event of eviction, in addition to the purchase price.

■ The lower court found as a fact that Hottle paid more than 50 per cent. of the purchase price of the property. The warrantor challenges the correctness of this finding. We are clear in the opinion that the lower court was correct. The contract was executed on May 18, 1933; and $150 on the price was then paid. On September 30th following, $33 was paid; and in November, $132 was paid. These total $326. That amount is $51 in excess of one-half the price. It is argued that Hottle was to pay 7 per cent. interest on the price and all taxes on the land. When these last payments were made, the accumulated interest amounted to only a few dollars, and the taxes of 1933 were not exigible. But even if it be conceded that any part of these taxes were deductible from the payments, it is wholly improbable that the amount thereof would have equaled the difference between the $51 and the interest on deferred payments to November, 1933. The amount of 1933 taxes is not proven. We are certain that when the $132 was paid, Hottle was entitled to a deed under the contract, and that his rights thereunder henceforth were of such a character that default in two consecutive monthly payments on the price did not and could not operate a divestiture of such rights. Had a deed been given Hottle after making said payments, and the note for the balance due, conditioned to be paid at the rate of $11 per month, executed by him, it is certain that default in any two installments could not have worked a forfeiture of his title to the land.

The exceptions and motion to strike out were properly overruled.

The judgment, in so far as it recognizes plaintiff as owner of the land in question, is not challenged by defendants or Anthony.

■ The lower court found that the improvements placed on the land by Hottle and defendants were worth $350. Judgment for this amount, plus $326 paid on the price, less $7, the value of timber sold from the land, was awarded defendants. They complain of this judgment only as regards the amount allowed for their improvements. This, they contend, should have been $800. We have studied the testimony bearing upon this issue very closely, and observe no manifest error in the trial judge's finding on this question of fact. We are quite certain these improvements are not worth nearly $800.

■ It appears that the Cooper Realty Company, of Shreveport, acted as realtor in consummating the contract between Anthony and Hottle. In July and August, 1933, Hottle paid the company $44 to be applied on the contract, and defendants insist that these payments are chargeable to Anthony. The lower court did not agree with this contention and rejected the payments as credits on the price. We think the ruling correct. Anthony swore that these payments were never delivered to him and that this company was not authorized to receive same for his account. This testimony is not contradicted to any extent.

The warrantor charges that defendants are not possessors in good faith and therefore not entitled to recover the value of their improvements. We have held that they possessed the land as owners. Such possession has all the earmarks of good faith. As an element of damages resulting from the warrantor's own unlawful act, they have the right to recover from him the value of these improvements and leave to him and plaintiff the question of the future disposition of same.

We are of the opinion that the judgment appealed from is correct. It is hereby affirmed; costs of appeal are assessed against the warrantor.