Oliver Williams, a defendant herein, during the existence of his marriage with plaintiff acquired several parcels of real estate, including one-half interest in lot 73 of Mount Zion Subdivision in the City of Shreveport, Louisiana. It was a community asset. While the title to the interest in the lot thus reposed, on June 9, 1931, plaintiff instituted suit against Williams for separation a mensa et thoro in the District Court of Caddo Parish. A rule to show cause why a preliminary injunction prohibiting and restraining the defendant from mortgaging or in any manner disposing of any part of the community property was sued out, and to preserve intact the status quo of such property pending the rule, a temporary restraining order issued. Contemporaneously with the filing of said proceeding, proper notice of lis pendens was registered in the mortgage records. Trial of the rule was had on June 20th, resulting in issuance of a preliminary injunction as prayed for. On October 14, 1931, judgment decreeing separation from bed and board was granted to plaintiff which was thereafter followed by judgment of final divorce.
Notwithstanding he was restrained from so doing, Williams, on June 18, 1931, purportedly conveyed his interest in said lot 73 and another lot to his daughter, Alberta Williams Brightop, who, at the time, owned the other one-half interest in lot 73. In like manner Williams purportedly conveyed to another person other community property and mortgaged to himself and to the future owner of the mortgage note, portions thereof. He was, after due proceedings, sentenced to imprisonment and to pay a fine for contempt of court for violating said restraining order.
On October 28, 1931, plaintiff, under appropriate pleadings, ruled Williams, Mrs. Brightop and the other vendee of Williams to show cause: "* * * why the said deeds and mortgage referred to hereinabove should not be declared null, void, and of no legal effect whatever, and cancelled and erased from the Conveyance and Mortgage Records of Caddo Parish, Louisiana;"
The rule was put at issue by answers and Judge T.F. Bell, now deceased, gave written reasons in sustaining plaintiff's position in the rule, and as regards the purported sale to Mrs. Brightop of said lot 73, said: "In accordance with the above, there should be further judgment decreeing the nullity of the deed or deeds from Oliver Williams to Alberta Williams insofar as same affects an undivided one-half interest in Lot 88 of the Hotchkiss Subdivision and Lot 73 of the Mount Zion Subdivision, and like interest in the improvements (except the restaurant)."
The judgment signed by Judge Bell insofar as concerns the deeds attacked, reads: "It is further decreed that those certain deeds * * * be, and the same are hereby declared null, void and of no effect insofar as they may affect the rights of plaintiff, Bessie Williams, as recognized and set forth in this judgment."
Bessie Williams was given a money judgment amounting to several hundred dollars against her husband in the judgment awarding her final divorce. Under this judgment she caused a one-fourth interest in said lot 73 to be seized and sold, she becoming the purchaser thereof. This action was taken on the assumption that her divorced husband owned his community one-fourth therein through and by virtue of the judgment above mentioned, signed by Judge Bell. *Page 643 
Plaintiff's contention now is that she owns an undivided one-half interest in said lot 73, one-fourth being her community portion and one-fourth by virtue of the sheriff's sale; and acting upon this theory, the present suit for partition of the lot and an accounting for the revenues derived therefrom was instituted.
The interest of Alberta Williams Brightop in said lot by mesne conveyances at the time this suit was filed vested in Early Williams, who intervened in the case and asserted ownership to a three-fourths interest in the lot. Intervening transferees were also impleaded as defendants.
Early Williams' position is based upon the theory that the judgment rendered by Judge Bell annulled and set aside only the deed by Oliver Williams to Mrs. Brightop to the extent of plaintiff's community interest therein; that is, he construes the judgment annulling said deed insofar as it affects plaintiff's rights to have reference to her one-fourth interest and no more.
The lower court sustained this position and held that plaintiff owned only one-fourth interest in the lot and that Early Williams owns the other three-fourths interest therein. Partition of the property by licitation was ordered. The claim of plaintiff for rents and revenues and the counterclaim of defendants for taxes and improvements for lack of satisfactory evidence were dismissed as of nonsuit. Plaintiff appealed.
The court gave written reasons for judgment from which we quote the following:
"The written opinion of Judge Bell, which is found in the record, set aside all of the deeds and mortgages now sought to be set aside, `in so far as same affects an undivided one-half interest in Lot 73 of the Mount Zion Subdivision, and like interest in the improvements.' The judgment signed in keeping with said opinion set aside all the deeds and mortgages herein sought to be set aside and cancelled, only insofar as they might affect the rights of Bessie Williams.
"After reading the record and expressions of Judge Bell, I am convinced that it was his intention to set aside the deeds and mortgages insofar as they affected the half interest in the property standing in the name of Oliver Williams, but in view of the fact the judgment as read and signed only set aside these deeds and mortgages insofar as they affect the rights of Bessie Williams, her rights being a one-fourth interest in said lot and improvements, the deeds and mortgages stand insofar as the three-fourths interest in the property is concerned."
Plaintiff's fears of lack of fair treatment from her husband with respect to a liquidation of the community property, the record conclusively shows, were well founded. With studied effort he sought to circumvent her rights in the property. She sought and procured injunctive relief in anticipation of such action by him. The injunctive relief was designed to maintain the status quo of the community property until the marital relations between the parties could be orderly liquidated through judicial procedure. Registry of lis pendens served to notify the public of the pendency of the suit and what it involved. All persons were thereby warned not to acquire any of the community property except at their risk and peril. Neither the injunction nor the notice of lis pendens arrested the purposes of the husband and those with whom he acted in concert to thwart, so far as was possible for them to do, plaintiff in her legitimate efforts to have a fair and just liquidation of the community assets.
It is clear it was the opinion of Judge Bell that the deed to Mrs. Brightop by her father, Oliver Williams, should be annulled in toto. This was necessary to fully protect plaintiff in her rights with regard to the property and also to vindicate the court's order enjoining the husband from doing exactly what he did do in flagrant contempt of the court's authority.
Plaintiff's interest in the property was not solely confined to her community one-half. She had, as the money judgment evidences, a substantial financial interest in having the property restored to its former status and by having it disposed of under the court's direction.
The controversy in this case arises from the language of the judgment signed by Judge Bell, which, it is argued, should control his written reasons for such judgment. It is obvious that if the judgment had strictly followed the language of the written reasons, the main issue tendered in this case would not have arisen. The question now to be determined is whether or not the judgment for all legal intents and purposes has the same meaning and effect *Page 644 
as it would have had, had the language thereof been the same as used by the Judge in written reasons for the judgment. We think it has such meaning.
When a final judgment is ambiguous or susceptible of two different constructions as regards material parts, resort may be had to the pleadings in order to clarify, if such be possible, ambiguities and uncertainties. Davis v. McCain,171 La. 1011-1018, 132 So. 758; Succession of Regan, 12 La.Ann. 156; Succession of Durnford, 1 La.Ann. 92; Peniston v. Somers, 15 La.Ann. 679.
In this last case the court said: "A judgment must be construed with reference to the pleadings, and when it admits of two constructions, that one will be adopted which the court should have rendered on the facts and law of the case. Trépagnier v. Williams, 4 La. [99], 100; Rochelle's Heirs v. Cox, 5 La. [283], 287."
In Sharp et al. v. Zeller et al., 114 La. 549-552, 38 So. 449, 450, the court in considering an ambiguity in a judgment with which it was dealing, said: "It is familiar doctrine that judgments are interpreted by the pleadings and by the subject-matter of the suit. It is equally well settled that the whole context of the judgment should be considered, and in case of doubt preference should be given to that construction which is more consonant with a proper decree on the facts and law of the case."
Therefore, when the pleadings in the case, ending in the judgment annulling the deed to Mrs. Brightop, are considered, and the written reasons of the Judge preceding the judgment signed by him are given their proper influence, the conclusion seems irresistible that said judgment was intended to and should have the effect of annulling in full the involved conveyance.
Our attention has been called to the fact that in one of the many cases between these parties the lower court held that the restaurant building on said lot was originally the separate property of Oliver Williams. The lower court inadvertently overlooked this. This building or its value should not enter into the partition of the lot with the other buildings thereon.
We agree with the lower court in its conclusion that the testimony does not warrant a judgment of any sort in favor of plaintiff on her demand for rents and revenues nor does such evidence warrant judgment in favor of defendants on their claim for taxes and costs of improving the property.
For the reasons herein assigned, the judgment appealed from is amended by decreeing plaintiff, Bessie R. Williams, to own an undivided one-half interest in lot 73 of Mount Zion Subdivision in the City of Shreveport, Louisiana, and decreeing Early Williams to own the other one-half interest therein; and that the proceeds of sale of said lot to effect a partition thereof be accordingly divided after payment of all costs, etc., as directed by the judgment of the lower court.
It is further ordered that the restaurant building on said lot be not included in the sale thereof to effect said partition.
And, as amended hereby, the judgment appealed from is affirmed. Defendants are cast for costs of appeal.