FOURNET, Chief Justice.
The plaintiff, Georgia Brightop, alleging that as the sole heir of Ernest Brightop, deceased, she is entitled to a J4 interest in Lot 73, Mt. Zion Subdivision, City of Shreveport, now in possession of the defendant, with buildings and improvements thereon (except a restaurant), and to rents and revenues therefrom, which property was acquired by her grandfather, Oliver Williams, and her mother, Alberta Williams • Brightop, in equal proportions during the existence of the community between her mother and father, seeks to be decreed the owner of an undivided interest therein and for judgment for a fourth part of the revenues. The defendant, Baylor Culpepper, admitted he was in possession of the whole property, that he would refuse to account to plaintiff for rents and revenues if demand were made, and prayed that he be decreed owner of the property in its entirety, having acquired same at Sheriff’s sale to effect a partition pursuant to a judgment of the district court in suit No. 86,009, dated July 10, 1943, as amended by the Court of Appeal, Second Circuit, on January 31, 1944. See Williams v. Williams, 17 So.2d 641.
Subsequent to the filing of the above suit (August 8, 1944), on January 3, 1945, another proceeding was instituted by plaintiff Georgia Brightop in which she was joined by Alberta Williams Brightop, Oliver Williams, Early Williams, and P. T. Beck, administrator of Mary Winn, against Baylor Culpepper, Bessie Williams, J. Howell Flournoy, Sheriff of Caddo Parish, and the heirs of Duncan Dabner, deceased, seeking to have the judgment of January 31, 1944, declared null and the sale thereunder to Baylor Culpepper set aside on the ground that the judgment is void as to Georgia Brightop, then a minor and not represented; that it is also void as to Alberta Brightop for lack of legal citation, and void as to the heirs of Duncan Dabner who were not made parties and who (the plaintiffs claim) own an interest in the property; consequently void as to all persons and interests because of lack of proper parties. In this second suit the defendants filed a plea of lis pendens as to Georgia Brightop and a plea of res adjudicata as to the remaining plaintiffs, urging that “the same issues raised by them in this suit were adjudicated by the Court in suit No. 86,009, in which the same parties were before the Court as are now before the Court in this suit, and said issues were definitely settled and adjudicated therein.” Some three years later, on motion by the defendants, the suits were consolidated, the plea of res adjudicata was argued and submitted, and was overruled. The consolidated cases were then tried in the lower court, and there was judgment in favor of the defendants re *767 jecting the demands of the plaintiffs in both suits. From that judgment the plaintiffs prosecute this appeal.
In view of the protracted litigation involving interests in the property in controversy, and in order to intelligently dispose of the issues, we think it advisable to give a history of the many transactions affecting this property in the chronological order of events.
The record discloses that on September 14, 1929, by act before a notary public, John C. Thomas sold the said Lot 73, Mt. Zion Subdivision, Shreveport, Louisiana, in equal portions tp “Oliver Williams, single,” and to “Alberta Williams, single,” for $716.19, and thereafter two houses were erected upon the lot, each house containing two apartments. At the time of the above purchase Oliver Williams was in fact married to Bessie Williams, and it is contended by plaintiffs that Alberta Williams (the daughter of Oliver Williams by a previous union) was the wife of Ernest Brightop. On June 10, 1931, Bessie Williams instituted suit against Oliver Williams for separation from bed and board, and for a partition of the community, and on the same date obtained a restraining order enjoining Oliver from mortgaging or in any way disposing of any part of the community property (of which there were several parcels of real estate and some funds in bank). Contemporaneously with the filing of this proceeding, proper notice of lis pendens was registered in the mortgage records. Trial of the rule re-' suited in the issuance of a preliminary injunction, and on October 14, 1931, judgment was rendered decreeing a separation from bed and board and ordering an inventory of the community property. However, eight days after institution of the above suit, and notwithstanding that he was restrained from so doing, Oliver Williams purportedly conveyed his interest in Lot 73 to his daughter, Alberta Williams Brightop (the owner of the other half interest), by deed dated June 18, 1931, duly recorded; and on October 28, 1931, Bessie Williams obtained issuance of a rule against Oliver Williams and Alberta Brightop to show cause why the deed of June 18, 1931, should not be decreed null as being executed after the recording of the notice of lis pendens and by reason of the preliminary injunction. Judgment on this rule, rendered on June 29, 1932, decreed that an undivided V2 interest in the lot and improvements was community property and that therefore the deed from Oliver Williams to his daughter was null; and ordered the notary to proceed with the inventory and a partition on that basis. Shortly thereafter, on July 25, 1932 (before any steps had been taken toward a partition), Oliver Williams and Alberta Brightop executed notes aggregating $2,994.40 in favor of Mary Williams Winn, the sister of Oliver Williams and a resident of Dallas, Texas, the said notes being secured by a special mortgage on Lot 73 and another piece of community property. This document was immediate *769 ly recorded in the mortgage records, and on October 26, 1932, Bessie Williams filed a new petition in the above suit assailing the validity of this special mortgage on the ground that it was executed after filing of the notice of lis pendens and with intent to defraud her of her rights. A new trial was had, and on December 13, 1933, judgment was rendered decreeing the deed of June 18, 1931, and the mortgage of July 25, 1932, null, void, and of no effect “insofar as they may affect the rights” of Bessie Williams as recognized therein. Interests in certain real property, including an undivided one-half interest in Lot 73, were again decreed to belong to the community, and the notary was ordered to proceed on that basis with the partition. A money judgment for $1,849.33, representing the enhanced value of separate property of Oliver Williams which had been improved with community funds was also .decreed in the same judgment. In execution of this judgment Bessie Williams caused to be issued a writ of fieri facias and pursuant thereto Williams’ interest in the community property (including his undivided one-fourth interest in Lot 73) was seized, along with certain separate property. At the Sheriff’s 'sale which followed on February 7, 1934, Bessie Williams became the adjudicatee of Williams’ interest in the community property, but the document bears the Sheriff’s notation that the property was adjudicated to Bessie Williams subject to the cancellation of prior mortgages. There were of record the mortgage in favor of Mary Williams Winn (affecting Lot 73 and another lot), in amount of $2,994.40, and a mortgage executed by Oliver Williams under date June 22, 1931 (after recordation of lis pendens) in favor of “future holders” in amount of $2,250, affecting a third piece of community property, which amounts exceeded the price for which the property had been adjudicated. Bessie Williams then proceeded by petition in the separation suit, alleging that the mortgages were illegal, null, without consideration, and executed pursuant to a fraudulent conspiracy for the purpose of defrauding her of her community rights; and obtained a rule against Oliver Williams, Alberta Brightop, Mary Williams Winn, and the Sheriff of Caddo Parish, to show cause why the two mortgages should not be cancelled and erased from the records and the property delivered to her free of the mortgages. At about this time Mary Williams Winn died, and her administrator filed a third opposition in these proceedings. Before judgment was rendered on the above rule Oliver Williams (on the advice of an attorney for the Home Owners’ Loan Corporation as an aid in securing a loan) executed another “sale” to Alberta Brightop, conveying his undivided interest in Lot 73 and the improvements thereon, whereupon another rule was sought by Bessie Williams against Oliver Williams and his daughter on the ground that the second deed was simulated and fraudulent. These two rules were consolidated, and in a written opinion the *771 trial judge prefaces his findings with the following observation : “The allotted span of life, three score years and ten, is far too short to recite in this opinion all the ramifications this muchly litigated case has taken. Its tragedy of errors has made it almost impossible to unscramble this broken mass of eggs.” (Italics ours.) He then stated that in his opinion the proper way to have handled the entire matter would have been in a partition proceeding; but since the signed judgment of December 13, 1933, gave Bessie Williams a money judgment which she had executed upon, seizing thereunder some of the community property, he saw no way of setting everything aside and ordering the partition to proceed, especially in view of the fact that the “present rules do not involve, so far as we can determine from the pleadings, the title to defendant’s [Williams’] part of the community property any further than the effort on the part of Bessie Williams to have certain mortgages and deeds erased from the records.” He then reexamined his judgment of December 13, 1933, found that the deeds and mortgages referred to were declared void not in toto but only insofar as they affected the rights of Bessie Williams as set forth in that judgment — with the exception of the mortgage to “future holders” which had been previously annulled as being simulated. Pursuant to these findings a judgment was rendered on November 21, 1934, ordering that the mortgage to future holders be cancelled and erased in toto from the public records, and that the deed executed by Oliver Williams to Alberta Brightop affecting Lot 73, of date June 8, 1934, be cancelled and erased only insofar as it affected the rights of Bessie Williams as defined in the judgment of December 13, 1933.
There is of record a deed from the Sheriff of Caddo Parish, filed on February 21, 1935, selling and transferring to Bessie Williams the interest of Oliver Williams in the community property (including his undivided J4 interest in Lot 73) as adjudicated to her on February 7, 1934.
Thereafter the following transactions took place with respect to the property here involved: On April 26, 1937, Alberta Brightop (now a widow, Ernest Brightop having died in 1932) sold to her aunt, Emma (Williams) Dabner, the wife of Duncan Dabner, and to Jessie Williams (single), her uncle, in equal proportions, Lot 73 and improvements (and another piece of property decreed to belong to the community between Bessie and Oliver Williams), for a recited consideration of $79.65, “tax sale for 1934 and 1935 taxes, together with Mary Williams Winn’s mortgage on said property, for the sum of $3,194.40.” It would be well to explain here that a considerable portion of the work of erecting the houses and installing water works on the property was done by the above-named Jessie Williams, brother of Oliver Williams and of Emma Dabner, and in consideration of his services he was permitted to have as *773 his own the lower part of one of the buildings, known as the restaurant. His ownership thereof has been admitted throughout this extended litigation. On June 15, 1940, in a sale executed before a notary-public, Alberta Brightop, Emma Dabner and Jessie Williams sold to Prudom Isaac, a single man, Lot 73 and improvements, and another piece of property, for a recited consideration of $1,800 cash, the receipt of which was acknowledged. The deed was signed in Louisiana by Alberta Brightop ■only; however, there is a statement appended by a notary of Dallas, Texas, that Emma Dabner and Jessie Williams appeared and accepted the terms and conditions ■expressed in the instrument.
At this point in the history of these cases Emma Dabner died intestate, leaving a husband, Duncan Dabner, and one son of a previous marriage, Joseph Solotash; and shortly thereafter Duncan Dabner died, being survived by a brother.
On October 13, 1942, Bessie Williams filed suit No. 86,009, naming as defendants Jessie Williams, Oliver Williams, Alberta Williams Brightop, Prudom Isaac, the Heirs of Emma Dabner, and P. T. Beck, administrator of Mary Williams Winn; and asserting ownership of an undivided half interest in Lot 73 and improvements, she sought a partition by licitation and an accounting of the rents and revenues. The property was judicially sequestered on the same date. Two days later, on October 15, 1942, Jessie Williams and Joseph Solotash (son of Emma Dabner, deceased) sold to Prudom Isaac “all the interest they may have or have had” in Lot 73, with improvements, terming the instrument a quitclaim deed, for a recited consideration of $500; and on December 3, 1942, Prudom Isaac sold to Early Williams, by deed before a notary in Harrison County, Texas, Lot 73 with improvements thereon for a recited cash consideration of $1,700. Shortly thereafter, on December 12, 1942, Early Williams filed a petition of intervention in suit No. 86,009, alleging his purchase of Lot 73 with improvements from Prudom Isaac, his discovery subsequent to the purchase that the property was involved in the above numbered proceeding, and his interest in opposing the claim of Bessie Williams to ownership of a half interest. He adopted the position of the defendants, namely, that Bessie Williams was the owner of an undivided one-fourth interest only in Lot 73, and that Early Williams was the owner of the remaining three-fourths interest, acquired through purchase. Bessie Williams resisted the claim of Early Williams, contending that the deed to him was a mere simulation, without consideration, and made with intent to defraud her. At the conclusion of the trial, judgment was rendered decreeing Bessie Williams to be the owner of an undivided one-fourth interest and Early Williams to be the owner of the remaining three-fourths interest, the trial judge having arrived at this conclusion through reference to the judgment of Judge Bell (de *775 ceased) in the separation suit, and having construed the Judge’s intention to be that the various deeds’ and mortgages were set aside only insofar as they affected the rights of Bessie Williams. From this judgment an appeal was taken, and in the course of its opinion the Court of Appeal makes reference to a number of the transactions which had occurred up to that date involving Lot 73, reviews the suit for separation from bed and board in its varied manifestations, and states that “Plaintiff’s fears of lack of fair treatment from her husband with respect to a liquidation of the community property, the record conclusively shows, were zvell founded. With studied effort he sought to circumvent her rights in the property. * * * Neither the injunction nor the notice of lis pendens arrested the purposes of the husband and those with whom he acted in concert to thzvart, so far as was possible for them to do, plaintiff in her legitimate efforts to have a fair and just liquidation of the community assets.” [17 So.2d 643.] (Italics ours.) The judgment of the trial court of December 13, 1933 (rendered in the suit for separation from bed and board) was interpreted so as to give it a meaning consonant with the intention of the court as revealed in Judge Bell’s written reasons for judgment. The appellate court thereupon amended the judgment of the lower court in .the suit on appeal (No. 86,009) by decreeing Bessie Williams to own an undivided half interest in Lot 73, and decreeing Early Williams to own the other, half interest therein. See Williams v. Williams, La.App., 17 So.2d 641. Application for writ of certiorari was made to this Court, and was denied on April 18, 1944.
When judgment in the above suit became final, there was a Sheriff’s sale to effect a partition, and on May 31, 1944, the property was adjudicated to Baylor Culpepper for $2,250, and he went into possession. This is the judgment and sale here sought to be annulled.
An examination of the record shows that all the parties plaintiff in this suit with the exception of Georgia Brightop were parties in suit No. 86,009. The plaintiffs’ contention that Alberta Brightop was not legally cited therein as she was not an absentee within the legal meaning but was temporarily absent doing war work and visited home frequently and therefore the appointment of a curator ad hoc was totally unauthorized by law, is contradicted by Alberta Brightop herself, who admits she was not in -Shreveport at the time but was living in Oakland, California. W. B. Massey, appointed by the court as curator ad hoc for the “non-resident or absent defendants Alberta Williams Brightop, individually, Alberta Williams Brightop, Tutrix,” is the attorney who had represented Alberta Brightop for a number of years and who represents her in this proceeding. She was, therefore, properly and legally cited and represented. Moreover, besides having been a party to the previous suit, Alberta Brightop is without interest here, *777 having sold whatever rights she claimed long before the suit was filed.
While it appears that in suit No. 86,009 there was the intention to make Georgia Brightop, then a minor, a party defendant, she was erroneously referred to as the “minor E. B. Brightop” and was served through a curator ad hoc, the same W. B. Massey appointed to represent her mother. Whether or not such citation was sufficient we express no opinion, since the record clearly shows that Georgia Brightop is without interest in the property and therefore is without any right of action. Aside from the fact that there is no evidence to establish with any reasonable degree of certainty the marriage of her parents, or that she is the child of Ernest Brightop — if her mother, Alberta Brightop, did acquire any interest in this property, it was separate and paraphernal and formed no part of the community of acquets and gains between Alberta and Ernest Brightop. With reference to the marriage between the parents, the evidence is so confusing that it is impossible to determine just what took place. As an example, Alberta Brightop testified at the trial of this case, in 1948, that she was then 38 years of age, and that when she and her father bought the property (in 1929) she was about 19 years old — which would make the year of her birth 1910; but the proof of marriage offered is a proces verbal, duly filed and recorded, of a marriage between Alberta Williams and Atriss Brightop (claimed to be the same person as Ernest B. Brightop) which took place on November 29, 1917, at which time Alberta Williams must have been about 7 years of age. In any event, we are convinced that Alberta Brightop paid nothing toward the purchase price of the property, and that the recitation of her joint acquisition with her father was in fact a mere gift from Oliver Williams to his daughter in a concealed effort to defraud his estranged wife Bessie Williams of her interest in the community. Alberta Brightop testified that at the time she was employed for a wage of $5 per week and, so far as is shown, had no other assets. Although she says that she helped her father buy the property in that she helped him borrow the money from his sister, Mary Williams Winn, to pay for it, and in support thereof offers notes signed by herself and her father, one in July, 1928 ($800.46) and the other in January, 1929 ($217.84), she admits that no payments thereon have been made by her.
It would appear that this is another effort by Oliver Williams to again lay claim to an interest in Lot 73 — this time through Georgia Brightop; and the fact that the succession of Ernest Brightop does not list any interest in the property, nor is such interest listed as the property of the father in the tutorship proceeding by which Alberta Brightop was appointed tutrix of the “minor of E. B. Brightop,” is further indication that whatever interest Alberta *779 Brightop owned formed no part of the community.
The further contention of the plaintiffs that since suit No. 86,009, culminating in the judgment of January 31, 1944, was for the purpose of effecting a partition of Lot 73, the fact that the heirs of Duncan Dabner (who these plaintiffs claim have an interest) were not made parties, strikes the judgment and the partition with nullity, is equally without merit. These so-called heirs not only failed to urge an interest in the property, but joined the defendants in the plea of res adjudicata and in the answer denying the claims of the plaintiffs.
For the reasons assigned, the judgment appealed from is affirmed.