(78 South. 553)

No. 22936.

TALBOT v. NEW ORLEANS LAND CO.

In re NEW ORLEANS LAND CO.

(April 1, 1918.　Rehearing Denied April 29, 1918.)

*(Syllabus by the Court.)*

1. VENDOR AND PURCHASER ☞112(1), 129(5) —SALES—CONTRACT FOR SALE—"GOOD AND SUFFICIENT WARRANTY TITLE"—BREACH— RESCISSION.

Where, under a contract between an owner of real estate and another, the obligation is imposed upon the owner to make "a good and sufficient warranty title," when certain conditions shall have been complied with, and the right to demand such title has been conferred upon the other contracting party, and, the conditions having been complied with, the owner tenders a title which is incumbered by an inscription showing pending litigation, such tender amounts to an active violation of the contract, an action will lie for its rescission, and for the recovery of money paid thereunder, and the owner cannot be heard to say that the contract itself is a sufficient title, and that none other is needed, since the contract itself is conclusive to the contrary.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Good and Sufficient Title.]

2. VENDOR AND PURCHASER ☞112(1), 129(5) —PROMISE TO SELL — RESCISSION BY PURCHASER — CONTRACT FOR TITLE — CONSTRUCTION.

The provision of the Civil Code (article 2462) to the effect that "a promise to sell amounts to a sale" has no application to a case in which the parties have otherwise agreed; nor has the doctrine that a buyer in possession has no right of action to rescind a sale for an alleged defect in the title conveyed to him, save in case of his eviction, since the seller warrants the possession, but cannot foresee or prevent attacks which may be unfounded upon the title, whereas the obligation to furnish a good and sufficient warranty of title means a title which is not involved in or threatened with litigation, and the obligor who is unable to comply with that obligation is in the same predicament as the seller who is unable to protect the possession of his buyer.

Action by Paul T. Talbot against the New Orleans Land Company. A judgment of the Court of Appeal, Parish of Orleans, affirmed a judgment of the district court, in favor of plaintiff, and defendant applies for a writ of review. Judgment affirmed.

Charles Louque, of New Orleans, for applicant. Johnston Armstrong, of New Orleans, opposed.

MONROE, C. J. On April 8, 1910, the defendant (applicant before this court) and the plaintiff executed, by private signatures, an instrument entitled "Bond for Deed," reading in part as follows:

"This agreement, * * * between the New Orleans Land Company, * * * party of the first part, and P. T. Talbot, M. D., * * * party of the second part:

"Witnesseth, that the party of the first part

hereby agrees to sell and the party of the second part hereby agrees to buy the four certain lots [describing four lots in this city]. The party of the second part agrees to purchase, and does purchase, the above-mentioned property for the sum of $1,400.00, on the following terms and conditions, to wit: One hundred and forty dollars, paid this day, the receipt whereof is hereby acknowledged, and 63 notes, of $20.00 each, * * * to be paid to the New Orleans Land Company, at their office No. 427 Carondelet street, New Orleans, La., on or before the 1st day of June, 1910, and each and every month thereafter until the full sum shall have been paid, together with interest at the rate of 6 per cent. per annum. * * * Party of the second part reserves the right to pay any or all of the remaining notes, herein specified, before their maturity, interest being charged from date of note to the time of its payment only.

"In consideration of the covenants and agreements hereinabove made by the party of the second part, the party of the first part agrees, when all payments have been made in accordance with the terms and conditions of this agreement, to deliver to the party of the second part a good and sufficient warranty title to the premises herein described, at a cost of $3.00 to the party of the second part," etc.

There are other stipulations as to the character and positions of the buildings that may be erected, binding the "party of the second part" for the taxes for 1910 and thereafter, etc.

Plaintiff paid the notes issued by him as thus stated, which had fallen due prior to March 23, 1914, and on that day (through counsel) wrote a letter to defendant saying that he wished to avail himself of the right, reserved in the contract, of paying the notes which had not matured, requesting defendant to designate the notary before whom the company would pass its act of sale, at the cost stipulated, have all the necessary certificates attached, showing the lots to be free from mortgage and had not been sold, and let him know the exact amount due under the contract.

On March 25th following defendant (by its secretary and treasurer) replied, saying:

"I beg to state that Mr. John Wagner, in the Exchange Bank Building, is the notary who will pass the act of sale, * * * and I will thank you to communicate with him in regard to same."

On March 26th defendant furnished a statement of plaintiff's account showing a balance of indebtedness as follows:

Principal ............................$400.00
Interest to 6/1/14....................  99.20
Taxes, 1910—13.......................  32.64
                                      _____
  Balance in full...................$531.84

And on June 1, 1914, plaintiff appeared before the notary, so named, and, in presence of witnesses, declared that he was ready to accept title to the lots in question and pay the balance of the price, whereupon the notary tendered him a deed, together with mortgage and conveyance certificates in the name of defendant, upon which (mortgage. certificate) there appeared the inscription:

"Notice of suit in favor of the Leader Realty Co., Ltd., as per order of Civil District Court, No. 91.800, dated Dec. 8/09, recorded Dec. 10/09, in the mortgage Book 978, folio 461."

Plaintiff thereupon refused to accept the deed because of the inscription, but tendered the balance of price, and stated that he would have paid the same had the certificate been clear. And thereafter, on June 19th, he brought this suit, praying that the contract between him and defendant be annulled, and that he recover the amounts paid by him to defendant in accordance therewith, together with interest and attorney's fees; and, having obtained judgment as prayed for (save as to the attorney's fees) in the district court, which was affirmed by the Court of Appeal, defendant has brought that judgment before this court for review.

## Opinion.

[1] The "Bond for Deed" contains no recital of delivery of the property to, or acknowledgment of possession by, plaintiff, and, as a matter of fact, he never went into possession, though he testifies that he does not know that any one would have prevented his doing so. There is no evidence tending to show that he knew, at the time that he enter-

ed into the contract which he now seeks to annul, of the inscription which incumbers the title to the property in question, and we are of opinion that it would not, of necessity, have affected the right which he now asserts if he had possessed that information.

Defendant's obligation, under its contract, was to deliver to him "a good and sufficient warranty title," when he should have paid his outstanding notes, and it was agreed that he should have the right to pay them in advance of their maturities with interest computed only up to the time of payment. Having written to defendant that he desired to make such payment, and requested that he be informed as to the name of the notary before whom the deed would be executed and of the exact amount to be paid, he received a reply giving the exact amount that would be due (including the interest) on June 1st, informing him of the name of the notary who would pass the act, and requesting that he "communicate with him in regard to the same," which plaintiff did, with the result that the notary tendered him a form of deed from which and the certificates attached it appeared that the title was incumbered by an inscription showing a suit by the Leader Realty Company for the recovery of the property, which suit has been since decided by this court adversely to defendant and is now pending, on writ of error, in the Supreme Court of the United States.

Having thus referred plaintiff to the notary for his "good and sufficient warranty title," and the notary having tendered a title which was incumbered by a pending litigation, defendant thereby actively breached its contract, and nothing further was required of plaintiff as a preliminary to the bringing of this suit. According to our reading of the record, however, he made a tender, conditional upon the delivery of the title called for by his contract, of the amount which defendant had informed him would be due on June 1st, and we do not find that there was any error in the calculation of that amount. The obligation which the contract in question imposed on defendant to convey, and the right which it conferred upon plaintiff to demand a good and sufficient warranty title, are conclusive to the effect that the contract did not, of itself, in the opinions of the contracting parties, convey a title of that description, and that it was their understanding that such a title should be conveyed upon plaintiff complying with certain specified conditions, which, having been complied with by plaintiff, defendant cannot now be heard to say that plaintiff does not need the title thus contracted for.

[2] The provision of the Civil Code (article 2462) that "a promise to sell amounts to a sale" has no application to a case in which the parties have otherwise agreed, nor has the doctrine that a buyer, in possession, has no right of action to rescind a sale for an alleged defect in his title, save in case of eviction, since the seller warrants the possession, but cannot foresee or prevent attacks, which may be unfounded, on the title which he has conveyed; whereas, the obligation to furnish a good title means a title which is not, at the time, incumbered, or involved in, or threatened with, litigation, and the obligor who is unable to comply with that obligation is in the same predicament as the seller who is unable to protect the possession of his buyer.

In Baldwin v. Morey, 41 La. Ann. 1105, 6 South. 796, the contract related to a sugar house, the price of which was fixed at $6,000, and a quantity of land, the price of which was $30 per acre, and it read "Sold this day," with the stipulation, however, that the price for the whole should be paid in certain annual installments, "and all taxes; when done, Baldwin [the seller], or his heirs, will give a good deed." The payments were not made as required, and the seller having resumed

possession of the property and sued for the rescission of the contract, the court held that there was no sale, but a conditional agreement to sell, and said, among other things:

"Logically viewed, the contract has terminated by failure to comply with the conditions, but as contrary pretensions were set up, and as plaintiff is entitled to have the cloud removed from his title, judgment will be granted as prayed for."

And so, the position of the present litigants being the reverse of those occupied by them in the cited case, it may be said here. The defendant now before the court having failed to comply with the requirement that it should furnish a good and sufficient warranty title, the contract terminated, and plaintiff has the right to have it so declared.

It is therefore ordered that the judgment herein brought up for review remain undisturbed, and that the demands of the applicant with respect thereto be rejected at its cost.