HIBERNIA BANK & TRUST CO. **7956**

vs                                    No. 7956

RICHARD G. FITZGERALD

June 28th, 1920.

CHARLES F. CLAIBORNE, JUDGE.

This is a suit to compel a purchaser to accept title to certain lots of ground sold to him by the plaintiff. The defense is misdescription in the vendor's title and want of title. From a judgment against him the defendant appeals.

The facts are that plaintiff offered to sell, and defendant agreed to buy, five lots of ground situated in Square 172, bounded by General Ogden (late Jackson), Plum, Protection (late Upper Line) and Poplar (late Fifth), Streets, adjoining each other and measuring each 30' front on General Ogden Street by 120' deep, Lot No. 1 forming the corner of General Ogden and Plum Streets as appears by the following sketch:

Plaintiff's chain of title is as follows:

By an act dated October 31, 1876, the State Tax Collector sold to the State the following property assessed in the name of Estate of Adam Heene, viz:

"Five lots of ground in Square 172, bounded by Plum, Jackson, Fifth and Upperline Streets, fronting on Jackson Street, and being lots Nos. 1 to 5, measuring each 30' front by 120' deep, No. 1 forms the corner of Plum and Jackson Streets".

By act dated September 24th, 1877, the State Auditor *the same* sold to John Mehlhop five lots with the following description: x x "and fronting on Plum and Jackson Streets, lots 1 to 5 measuring each 30' by 120', Lot No. 1 forming the corner of Plum and Jackson Streets".

By that description it does not appear upon what particular street these five lots front, as it is evident they cannot all front upon both Plum and Jackson Streets.

By act before E. Commagere, Notary, dated July 15th, 1886, the heirs of Adam Heene ratified the two sales above mentioned by the State Tax Collector, and by the Auditor to Mehlhop of the five lots, with the faulty description contained in the Auditor's deed.

By act before Fred. Deibel, Notary, dated February 19th 1913, the heirs of Mehlhop sold to the Geier Bros. the same five lots 1 to 5 in same square described as follows:

"said lots adjoin each other and measure each 30' front on Plum Street by 120' deep, lot No. 1 forming the corner of Plum and General Ogden Streets. Being the same property which was acquired by John D. Mehlhop from the State of La. assessed in the name of Adam Heene per Auditor's deed of date September 21st, 1877; Reg. C.O.Bk. 109, p. 237, and which said deed was ratified by the heirs of Adam Heene by act of E. Commagere, late Notary, dated July 15th, 1886; Reg. C.O.Bk. 124 p. 308".

In the suit of the New Orleans National Bank vs Geier Bros., the five lots of ground with the same description above

589

*less the derivation,*

given were seized and advertised for sale, and sold to the Hibernis Bank & Trust Company by act dated September 17th, 1919.

This is the title tendered by plaintiff to defendant. The defense is that /

"the said description ( in the above sale) is an error, as the five lots adjoin each other and measure each 30' front on General Ogden Street ( or 150') by 120' in depth (on Plum St.) and consequently, that under the said sale and adjudication the said bank acquired, of the said five lots in question, (only) 120' on General Ogden Street by 120' (150') on Plum Street; that this would leave out lot No. 5 which has 30' front on General Ogden by 120' in depth, and that the title to said lot, as an undivided part of said area, makes the title unmerchantable and suggestive of future litigation and is not such a title as this respondent should be compelled to accept".

It is true that according to the act of Deibel of February 19th, 1913, the heirs of Mehlhop sold to Geier Bros.,according to the description contained in the act, five lots adjoining each other and measuring each 30' front on Plum Street, or 150feet, by 120' deep, lot No. 1 forming the corner of Plum and General Ogden Streets. By this description the vendors sold one lot more than they owned on Plum Street, 150 feet instead of 120 feet, and they left out lot 5 on General Ogden Street, for in order to include lot 5, a depth of 150' on General Ogden Street was necessary. Of course, it might be argued that it was evidently the intention of the heirs of Mehlhop to sell the five lots on General Ogden Street by 120' deep and front on Plum Street, because the act of sale declares that it was the "same property which was acquired by John D. Mehlhop from the State of Louisiana &c". But it does not state that it was the "whole property" so acquired, and the ambiguous description of these lots made to front on both Plum and General Ogden makes it uncertain what was sold.

But be that as it may, the Sheriff's sale to the plaintiff, the title acquired by, and tendered by it to the defendant,

calls for 150 feet on Plum Street by only 120 feet front on General Ogden Street, without any addition, explanation, qualification, or reference to any other act or prior acquisition or derivation of any kind. In order that the plaintiff, under such a title, and description, should be able to set up a claim of ownership to lot 5 fronting upon General Ogden Street, which is not included within its measurement, some evidence dehors the Sheriff's deed would be necessary, and perhaps some judicial proceedings, the outcome of which remains in doubt. At best, the title of plaintiff to lot 5 is not clear upon its face. The defendant is entitled to a clear title, free from doubt, or the apprehension of litigation. If it is necessary to go to expense or trouble to perfect the title, the burden is upon the vendor and not upon the purchaser.

In the case of Ker vs Evershed, 41 A., 15, where the plaintiff contended that the defendant had not acquired all the land his title called for through an error of description in the act of mortgage and in the Sheriff's deed, the Court said on p. 20:

"It is vain to say that Mrs. Evershed supposed she was buying a different property from that which was sold. Titles under judicial sales are not to be regulated by the mistakes or errors of purchasers unless such errors were induced by some defect in the proceedings themselves, or by some fraud or misrepresentation. The purchaser takes what is sold and what he buys, no more and no less. Suppose the error had been on the other side, and the Sheriff had seized and sold a less estate, could Mrs. Evershed, on alleging that she supposed it was a larger one, claim title to more than was sold"? "When the vendor sells property at public auction without title to even a small part of it, the vendee to whom the adjudication is made cannot be required to complete the sale and accept delivery". Pontchartrain vs. Durel, 6 La., 481.

We do not find it necessary to decide, nor do we decide, that the plaintiff had no title to lot 5. All we decide is that plaintiff's title to said lot is not, upon its face, clear and

591

free from doubt, and such a title ~~only~~ which defendant can be compelled to accept. It is not necessary that a purchaser should show that the title tendered to him by his vendor is bad; it is sufficient for him to show that he has reasonable grounds to apprehend litigation. The purchaser is entitled to a good title; this

> "means a title which is not, at the time, incumbered or involved in, or threatened with litigation". Talbot vs. N. O. Land Co., 143 La., 263 (268).

> "A party is not compelled to accept title which threatens litigation". 49 A., 360; 48 A., 1573.

> "The vendor should tender to the adjudicatee a title free from risks and not one subject to attack". 49 A., 39; 47 A., 121; 41 A., 1104; 40 A., 845; 35 A., 570; 377; 108 La., 143.

It is therefore ordered that the judgment herein be reversed and set aside and that there now be judgment in favor of defendant rejecting plaintiff's demand in both courts, and that plaintiff be condemned to pay costs in both courts.

Judgment reversed.

June 28th, 1920.

*In Tutor vs Broussard 43 a 966 the Court interpreted a conventional sale containing the express declaration that the land conveyed was in the same lands acquired by the vendor at the auction of Widow Jean Savoie &c —*