ELLIS, Judge.
Plaintiff, claiming to' be the owner of -certain land, in Tangipahoa Parish by prescription of thirty years acquirenda causa, instituted a possessory action to-be -maintained and quieted in his possession of. said land-described as-the SE14 of NEj4 of Section 33, Township 4 South Range 9 East, *282 naming as defendant Samuel Zemurray. This suit was filed on April 10, 1951, and on June 18, 1951,-Zemurray in turn brought suit against August Dixon claiming that Dixon was merely his tenant who had been in default of the payment of rent for the past three years, and that he as the owner was entitled to proceed by way of rule to evict Dixon.
Upon Dixon’s death, Harriet Dixon, as surviving widow in community and sole heir, was instituted as party plaintiff, and as party defendant in the Zemurray suit.
The defendant to Zemurray’s eviction proceeding was the thirty years possession on which Dixon’s action was based and a denial of any lessor-lessee relationship. In the alternative Harriet Dixon prayed to be allowed to recover the sum of $3,000, the alleged value of the improvements placed upon the property by her deceased husband.
The cases were consolidated for trial below and resulted in a judgment in favor of Harriet Dixon and against Zemurray, but upon rehearing judgment was rendered dismissing the suit filed by August Dixon and further judgment in favor of Zemurray ordering and commanding the substituted defendant, Harriet Dixon, to vacate the land in dispute and surrender same to Zemurray, but reserving to her the right to'remove from the property such of the improvements placed thereon, as could be legally moved. Appeals were perfected from both judgments to the Supreme Court which, upon hearing, transferred same to this court.
Counsel for appellant and appellee in the trial of the case, as well as in their brief and in argument before this Court attempt to treat Dixon’s suit as a petitory action when, as a matter of fact, it is clearly and distinctly nothing more than a pos-sessory action. The allegations of the petition and the prayer which is controlling request a “judgment in favor of petitioner, August Dixon, and against Samuel Zemur-ray,' maintaining and quieting' your petitioner in the possession of said property.”
The position taken by counsel is based upon the case of A. M. Edwards Co. v. Dunnington, La.App., 58 So.2d 225, in which this court stated that the action in that case was hard to classify in that it partook of both the petitory and possessory action. This is not true in the case at bar. In the Edwards case the Court further stated that the litigants and the trial judge in his written reasons had treated the action as a petitory one and we therefore so treated it. There is no doubt as to the nature of Dixon’s suit and it was never legally converted into a petitory action. As a matter of fact, counsel for Zemurray in making an offering of title specifically stated that same was not made for the purpose of converting the suit into a peti-tory action. Dixon’s suit, therefore, can only be treated as a possessory action.
While Dixon alleged that he was the owner of the SEJ4 of NEj4 of Section 33 Township 4 South Range 9 East, and that he had acquired this property during the year 1915 at which time he purchased a residence and moved it onto said property where he lived with his family and that he had been in the actual physical possession of said premises since that date under a claim as an heir of an aunt, Ellen Lott, whom he alleged had entered the property from the United States 'Government, there is not one iota of proof in the record to substantiate this claim or ownership.
Dixon further alleged that in the year 1919 he was disturbed in his possession by the Houlton Lumber Company in that the Houlton Lumber Company claimed to have an interest in the property and demanded that he purchase same, and that he, Dixon, purely for the purpose of quieting his title, complied with the demand of the Houlton Lumber Company by paying a cash amount and thereafter monthly payments which were deducted from the wages he earned from Houlton Lumber Company. Dixon then alleged that after the full amount of the unalleged purchase price was deducted, no further demands were made on him and -he presumed his title to said property had been quieted and that the interest of all ad *283 verse claimants had been fully settled and that the title to the property rested in him.
There is no contention that the plaintiff, Dixon, does not set forth a cause for a possessory action, however, the defendant, Zemurray, specifically denied that he was possessing as owner, and, on the contrary, set forth that he was possessing under an agreement to purchase which counsel for defendant, Zemurray, designates an “option to buy.”
The pertinent articles of the Code of Practice relating to the possessory action are as follows:
“47. Parties plaintiff. — The possessors entitled to bring these actions are those who possess as owner.
“Persons entitled to the usufruct or to the use of a real estate, and others having real rights growing from such real estate, may also bring their action, when disturbed in the enjoyment of their rights.”
“48. Persons holding possession in name of another not entitled to maintain action — Notice to landlord. — Those who possess in the name of another, such as tenants, are not entitled to the possessory action, when disturbed in the enjoyment of the real estate which they possess in that quality, or even when they are expelled; but they have their remedy against the person in whose name they possess, and they are bound to apprise him of the disturbance they have experienced, by personal notice, if he be within the State, and by advertisements in the newspapers, if he be out of the State, in order that he may quiet them if it can be done; otherwise they lose all right to claim damages from him, and will be liable to him besides for all the loss and damages which he may have sustained through their neglect.”
“49. Essential elements of posses-sory action. — In order that the possessor of a real estate, or one who claims a right to which such estate may be subjected, may be entitled to bring a possessory action, it is required:
“1. That he should have had the real and actual possession of the property at the instant when the disturbance occurred; a mere civil or legal possession is not sufficient; .
“2. That hé should have had that possession quietly and without interruption, by virtue of one of the titles prescribed in the forty-seventh article, for more than a year previous to his being disturbed; provided'the possession of less than one year be sufficient, in case the possessor should have been evicted by force or by fraud;
“3. That he should have suffered a real disturbance either in fact or in law ;
“4. That he should have brought his suit, at the latest, within the year in which the disturbance took place.
“When the possession of the plaintiff is accompanied with all those circumstances, it matters not whether he possesses in good or in bad faith, or even as a usurper, he shall nevertheless be entitled to his possessory action.”
There can be no dispute from the testimony in this case but that the plaintiff on Nov. 24, 1919 entered into a contract with Houlton Lumber Company with regard to the S/2 of SE/4 of NE/4 of Section 33, Township 4 South Range 9 East, containing 20 acres, and which it can readily be discerned comprises the south half of the 40 acres described in Dixon’s petition. It is further overwhelmingly proven that immediately thereafter Dixon built a home and fences and other improvements such as a barn and corn cribs on 29.62 acres of land in the SE/4 of NE/4 of Section 33 Township 4 South 9 East, and lived there until' his death. Dixon has proven more than thirty years actual, open, corporeal possession of the 29.62 acres. His proof satisfies every requirement of Article 49 but. fails to entitle him to bring this posses-sory action as he has failed to prove that he possessed as is required under Article 47, supra.
*284 Introduced in evidence- is the original contract entered into by August Dixon with the Houlton Lumber Comp.any on November 24, 1919 and it reads and contains the following: . .
“Uneedus, La., 11/24/29.
Received of August Dixon Fifty Dollars ($50.00) as earnest money and part payment for the South half -of the South east Quarter of the Northeast Quarter of Section, 33, Township 4, Range 9.
Purchase price to be Three Húndréd and Twenty ,(320.00) Dollars the bal-anee Two Hundred and Seventy-(270.-00) Dollars to be paid in 1, 2, and 3 years according to 3 Promissory Notes Dated November 24, 1919., and drawing interest at the rate of 6% per annum.
Upon the payment of the notes with interest and Taxes the Houlton Lumber Company will give to August Dixon a Warrantee Deed for the above described lands reserving the Oil and Mineral rights on said land.

In the case of Williams v. Harmanson, 41 La.Ann. 702, 6 So. 604, 605, the Court stated:
“The contention of defendants, that by the allegation of a particular title the plaintiffs converted their action into a petitory one, and were thereby bound. to establish such title as good and valid, is not sound. If, indeed, the title thus, exhibited showed on its face that the possession based thereon was not as owner, as required by Code Prac. art. 47, it might be fatal to the possessory, action, as was held in the case last quoted. But the mere allegation of a title of ownership, not produced or relied on by either party, and not appearing in the record, will be treated as a mere substantiation of the necessary allegation that plaintiff possessed under claim of ownership. * * * ”
In the recent case of Bossier Enterprises v. Carbone, La.App., 66 So.2d 521, 523, decided by our brethren of the Second Circuit, the principle enunciated in the Harmanson case, supra, is again reiterated and reaffirmed in the following language:
“In Cutrer v. Spring, La.App. 1941, 4 So.2d 106-108, the following , interpretation was placed on Article 47 of the Code of Practice:
“ ‘Article 47 of the Code of Practice provides that the persons entitled to bring the possessory action are those who possess as owners, persons entitled to the usufruct or use of the real property, and others having real rights *285 growing from such.real estate. While the, question of title is not an issue in a possessory action, yet if the plaintiff in such an action bases his right to resort to the action to he restored to the possession of the property which' .he possessed .as owner and refers to a title under which the quality and character of his possession is fixed, the title does then become relevant to show the nature and quality of the possession which was disturbed. If the title on which the possession is.based shows that the plaintiff; does not possess as owner, or in one of the other qualities necessary to give a right to resort to this form of action, the court will give effect to the title and deny the .plaintiff the right.to resort to the possessory action. Sallabah v. Marsh, 34 La.Ann. 1053; Williams v. Harmanson, Agent, 41 La.Ann. 702, 6 So. 604.’
“See also Article 3436 of the LSA-Civil Code; Foreman v. Fryerson, 1914, 135 La. 221, 65 So. 131; Winsey V. Bourgeois, 1933, 177 La. 919, 149 So. 519; Hearne v. Miller, 1931, 18 La.App. 551, 136 So. 151; Buckley v. Dumond, La.App. 1934, 156 So. 784; Bruning v. City of New Orleans, 1927, 165 La. 511, 518, 115 So. 733; Chagnard v. Natal, La.App. 1951, 53 So.2d 274.”
In Trichel v. Home Ins. Co., 155 La. 459, 99 So. 403, the Supreme Court of Louisiana, through Justice St. Paul, in interpreting the contract whereby the plaintiff “agrees to convey by deed'of warranty to the said Mrs. W. G. Cavell the following described property * * * upon the payment to the said Trichel by the said Mrs. Cavell of $5,750 as follows: $900 cash in hand paid, and the balance at the rate of $50 per month with interest from sale. Whenever the said Mrs. Cavell shall have reduced the principal to such an amount as such can (and will) borrow (from a certain building association), said Trichel agrees to make said warranty deed, on being paid said balance * * *”, held:
“It is claimed by the defendant that the foregoing contract operated a change of title, or at any rate a change of interest in the-assured. . .
“The trial judge did not think so; nor do we. .
“The pases, of Barber Asphalt Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193, and Adams Machine Co. v. Newman, 107 La. 702, 32 So. 38, are not applicable here. Those cases deal .with, personal property,, as to which the sale is complete between the parties by their mere consent, and as to the whole world by delivery. Hence where the thing sold has been delivered and the're remains' only to pay the price, it is quite immaterial what name the parties give to such price, rent or what not, the fact remains that there has been a sale and transfer of ownership.
“But, with real estate the case is different; neither consent,- nor delivery, nor payment of price suffice to transfer the ownership; there must be a deed translative-of the title. And the question in 'this case is whether there was such a deed.
■ “In Caire v. Mutual Building & Homestead Association, No. 7315 of its docket, [See Louisiana and Southern Digest] the Court of Appeal for the Parish of Orleans held that—
“A promise of sale amounts to a sale only in the sense that- it entitles either party tq enforce specific performance; but a promise of sale is not translative of property, and does not change the ownership of, or- dominion over, the thing, even as - between the parties, or put the thing at the risk of the promisee — citing McDonald v. Aubert, 17 La. [448] 449; Bennett v. Fuller, 29 La.Ann. 663; Broadwell v. Raines, 34 La.Ann. 677; Thompson v. Duson, 40 La.Ann. 712, 5 So. 58; Baldwin v. Morey, 41 La.Ann. [1105] 1107, 6 So. 796; Collins v. Desmaret, 45 La.Ann. 108, 12 So. 121; Peck v. Bemiss, 10 La.Ann. 160; Satterfield v. Keller, 14 La.Ann. 606; Garrett v. Crooks, 15 *286 La.Ann. 483; Knox v. Payne & Harrison, 13 La.Ann. 361.
% * :1c * • * *
“In Capo v. Bugdahl, 117 La. 992, 42 So. 478, this court held that a. contract reading as follows was a mere promise of sale, and not a sale, to wit :
“ ‘This is to certify that I have this day sold my house no. 1904 St. Louis St. to Thomas Capo, for the sum of $2,300, ten per cent, paid cash, balance when act- of sale is passed.' (Italics ours.)
“It will be observed that another deed was contemplated by the parties; hence it follows that the agreement abov.e said could not have vested title in the promisee, since ‘he who has once acquired the ownership of a thing by one title, cannot afterwards acquire it by another title; unless it be to supply a deficiency in the first title.’ R.C.C. art. 49S.
“A similar holding will be found in Legier v. Braughn, 123 La. 463, 49 So. 22; and our conclusion is that any agreement for the sale of real estate, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another and final deed, is a mere promise of sale and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be only d confirmation of the first, and not indispensable for the transfer of title. And on the face of the agreement herein entered into between Trichel and Mrs. Cavell, it will be seen that it was not to be final, but was to be followed by a formal deed under certain conditions.”
In McMillan v. Lorimer, 160 La. 400, 107 So. 239, 240, we find the following statement by the Supreme Court:
“We- do not find any error in the ruling of the court below in sustaining defendant’s exception. Plaintiffs brought their actions on the theory’that the contracts in question are executed and not executory agreements; -that they are actually contracts of sale and not merely' agreements to sell. Wé think they are wrong in thus interpreting the agreements. An inspection of the instruments, copies of which are annexed to and made a part of the petitions, shows that they are not designated as sales, and’ are not in the language or form of sales. They are not, and do not purport to be, transla-tive of property, but are conditional agreements to sell the lands described therein upon compliance by defendant with the conditions stipulated. These conditions are, that the purported vendors are to furnish the purported purchaser with abstracts of good and merchantable title of the lands, free of liens and incumbrances, except taxes; that the alleged purchaser shall be required to take only such portions of said real estate the titles to which are good and merchantable, or which can be perfected within a period of one year; future delivery of deeds is contemplated; occupancy. and possession by the prospective purchaser, not as owner, but as a tenant by sufferance, is stipulated; a tenant’s obligation as to repairs is provided for, and further provision is made for his removal as a tenant holding over; the right of the alleged purchaser to cut timber is restricted to selected tracts of not less than 160 acres each on the basis of an agreed price of $45 per acre, to be paid for previous to any cutting, and after notice to the prospective .vendors of said selection, separate deeds .to be made for each tract thus selected and paid for.
“The authorities are numerous that an agreement such as the ones in question here is not a sale but a mere promise to sell; that such a promise amounts to a sale only in the sense that the contract gives the parties the right to demand the specific performance thereof. The prospective purchaser has the right to enforce the transfer and *287 delivery, and the prospective vendor has the right to compel the acceptance of the property and the payment of the purchase price. See Civ.Code, arts. 2013, 2349, 2462; Herold v. Stockwell, 32 La.Ann. 949; Todd v. Piedmont & A. Life Insurance Co., 34 La.Ann. 63; Baldwin v. Morey, 41 La.Ann. 1105, 6 So. 796; Collins v. Desmaret, 45 La.Ann. 108, 12 So. 121; Capo v. Bugdahl, 117 La. 992, 42 So. 478; Talbot v. New Orleans Land Co., 143 La. 263, 78 So. 553.”
The only proof of any claim by the plaintiff August Dixon to any land in the SE/4 of NE/4 of Section 33 Township 4 South Range 9 East is shown in the contract with Houlton Lumber Company of date November 24, 1919 quoted above in full, which covers only 20 acres. It is, therefore, clear that Dixon was holding 9.26 acres without any relation to the contract or agreement with' Houlton Lumber Co. An examination of the contract herein, keeping in mind the principles laid down in the jurisprudence heretofore cited, stamps Dixon’s contract with Houlton Lumber Company as a conditional agreement to sell the land described therein upon compliance by Dixon of the conditions stipulated. As stated in the Trichel case, supra, a promise of sale is not translative of property and “does not change the ownership of, or dominion over, the thing, even as between the parties, or put the thing at the risk of the promisee.”
Therefore, for the above reasons, Dixon’s prayer in his possessory action insofar as the 20 acres described as the S/2 of SE/4 of NE/4 of Section 33 Township 4 South Range 9 East is concerned must be denied.
We are then confronted with the problem of whether his suit should be sustained as to the 9.62 acres which he has proven to have possessed for more than 30 years, without any title under claim of ownership. Not being restricted by the bounds of any contract to. purchase the 9.62 acres as he was by his contract with regard to the 20 acres, he is entitled to be quieted and maintained in his possession of the 9.62 acres. The difficulty presented is •by virtue of the fact that the evidence does not give proof of description of the 9.62 acres so that it can be accurately described and designated. The only thing we have in the record is a map showing the location of the property fenced and improved by August-Dixon m ¡the SE/4 of NE/4 of Section 33 Township 4 South Range 9 East, containing 29.62 acres in accordance with a survey of Tycer and Tycer, C. E., Amite, La., dated March 16, 1951. As a matter of fact, the map and the evidence fail to show where the 29.62 acres are located in the SE/4 of the NE/4.' For all we know Dixon may have taken possession of the North half. The only holding we can make is that if Dixon is holding possession of the 20 acres in the S/2 of the quarter section for which he merely held a contract to purchase, then his suit must be dismissed as to that particular land. From the record Dixon is not" entitled to a judgment as prayed for with regard to the 20 acres but he is entitléd to be maintained in his possession of all land which he has possessed for more than one year not included in the S/2 of the quarter section.
The case will be remanded only for the purpose of definitely establishing the number of acres which Dixon has under fence outside the S/2 of the SE/4 of NE/4 of Section 33 Township 4 South Range 9 East.
As regards the eviction suit filed by the plaintiff Zemurray against the defendant Dixon and which was consolidated for the purpose of trial with the possessory action filed by Dixon, Zemurray relies upon an alleged lease to Dixon dated May 14, 1941, covering the 20 acres, described in the contract with Houlton Lumber Company. This lease together with other offerings is not in the record, however, there is sufficient testimony and undisputed facts with regard to the purported lease that its nonappearance may be disregarded. The undisputed evidence shows that this lease' was not signed by August Dixon per *288 sonally but was signed “August Dixon by-Lorraine Howard.” -There is no proof of' Lorraine Howard’s authority to sign August Dixon’s name to this purported lease, in fact, the record proves the contrary. There is proof offered that August Dixon on certain occasions after 1941 agreed to sign a lease, however, Mr. Laneaux, representing the plaintiff Zemurray, frankly admitted that when- he finally cornered August Dixon at his home in the presence of witnesses and it was necessary for Dixon to either sign or not sign, he told Mr. Laneaux that he had lost one piece of land by signing and he wasn’t going to do it again. This document, therefore, is of no value insofar as the eviction suit is concerned.
August Dixon was an uneducated Negro and was on very friendly terms with all of his white neighbors and it is understandable that on the occasions when he was supposed to have said the property belonged to Zemurray and that he would sign a lease, that he was being agreeable in order to elude the actual signing of a lease, for when it came to the point of signing or not signing, he did refuse.
In view of the evidence and the fact that the plaintiff Zemurray in the eviction suit depends upon the alleged lease which the record shows was not signed nor entered into by the defendant Dixon, the relief prayed for must be denied.
It is therefore ordered that the suit of August Dixon v. Samuel Zemurray in which the plaintiff prays to be quieted and maintained in possession of the forty acres of land described in his petition be remanded to the District Court for the taking of additional testimony showing definitely and by an accurate surveyor’s description the number of acres which Dixon has under fence outside the S/2 of SE/4 of NE/4 of Section 33 T 4 South, Range 9 East and after hearing the additional testimony the District Court to render judgment in favor of the plaintiff-August Dixon, quieting and maintaining him in possession of all that certain land contained within the bounds of Dixon’s fence outside the S/2 of SE/4 of NE/4 in Section ■ 33 Township ■ 4 South, Range 9 East.
It is further ordered, - adjudged and decreed that the judgment of the District Court insofar as the plaintiff’s possessory action for the S/2 of SE/4 of NE/4, Section 33 Township 4 South, Range 9 East, containing 20 acres is "concerned be affirmed, that is, that plaintiff’s suit be dismissed as to these 20 acres.